## HARVEY v. TAMA COUNTY.

1. **Practice:** INSTRUCTIONS ASKED: WRITING. The statute requiring instructions asked to be in writing is sufficiently complied with when such instructions are written in pencil.

2. ——: ——: EXCEPTIONS. A general exception to the refusal of the court to give instructions asked is sufficient.

3. ——: ——: REFUSAL. Where the judge wrote upon the margin of the first of several sheets of paper; fastened together and containing instructions asked, "Instructions one to seven all refused," and signed the same, it was held to be in substantial compliance with the statute.

4. **Payment:** BY STRANGER: ACCORD AND SATISFACTION. In an action by the assignee of a deputy treasurer to recover from the county for services, it was held that the payment of the deputy by the treasurer, prior to the assignment of the claim, made and accepted in full satisfaction thereof, constituted a good defense to the action, although the treasurer might not be primarily liable for such services, and that the question as to the fact of such payment should have been submitted to the jury.

5. ——: RELEASE: IMPEACHMENT OF. Where a release of all claims against the county for such services, executed by the treasurer and deputy prior to the assignment of the claim to plaintiff, was pleaded as a defense, it was held that the plaintiff could not invalidate such release by showing that it was executed without consideration, for the purpose of corruptly influencing voters to re-elect the incumbent as treasurer.

*Appeal from Linn Circuit Court.*

TUESDAY, APRIL 6.

THE plaintiff, as the assignee of Samuel Forker, brings this action for the recovery of $1,200, for the services of Samuel Forker as the deputy of Daniel Forker, treasurer of Tama county for the years 1874 and 1875. The answer in the first count admits that Daniel Forker was treasurer of Tama county for the years 1874 and 1875; that he appointed Samuel Forker his deputy; that the appointment was approved by the board of supervisors of said county; that Samuel Forker served as deputy for the years 1874 and 1875; that plaintiff

presented to the board of supervisors, at their April session, 1876, a bill for allowance for said services, and that the board rejected and refused to allow said bill. The second count of the answer alleges that "said Samuel Forker entered upon and performed the work of deputy treasurer of Tama county for the years 1874 and 1875 with a full and express understanding between himself and Daniel Forker, treasurer of said county, that he, the said Samuel, should be paid by the said Daniel, and not by Tama county, for his services as such deputy; that the board of supervisors of Tama county, at the time they approved of the appointment of said Samuel Forker as such deputy treasurer, were informed by said Daniel and Samuel Forker as to the above named understanding, by which the said Daniel, and not Tama county, was to pay the said Samuel for his services as such deputy treasurer; that said board of supervisors, as the said Samuel at the time well knew, approved of the appointment and accepted of the services of the said Samuel as deputy treasurer with reference to said understanding; and that the said Daniel, in accordance with said understanding, has in fact fully paid the said Samuel for his services as such deputy treasurer."

The third count of the answer alleges "that before the beginning of this action, and before the alleged assignment to plaintiff of the claim sued on, the said Samuel Forker executed and delivered to defendant a written release of all the claim, or pretended claim, set up in plaintiff's petition, which release was at the time accepted by the defendant as a final settlement of said pretended claim."

The plaintiff filed a reply to the answer, denying all the allegations of the second count, and alleging as to the third count "that the instrument or contract set up in said count was executed without any consideration whatever, and that neither said county nor any other person paid, or has paid, any portion of the services to which said agreement refers; that the said agreement was executed under the following circumstances, and for the following purposes and none other, viz:

At the time of the execution of said writing, to wit: September 13, 1875, the said Daniel Forker therein mentioned was treasurer of said county of Tama, and said Samuel was his deputy, and the said Daniel was at said time a candidate before the people for re-election to said office of treasurer, at the then next ensuing election, and said Daniel and Samuel were made to believe by the politicians of the party which the said Daniel and Samuel represented in said election that, if they would sign such an instrument and file the same in the auditor's office, so that they, the politicians, could refer to it, it would induce the voters at such election, voting for such office of treasurer, to cast their votes for said Daniel, thereby offering and promising to the voters of said county at said election pecuniary considerations for them to cast their votes for said Daniel for treasurer as aforesaid, and that said agreement was made, executed and filed in said auditor's office for the purpose of influencing the voters of said county to cast their votes at said election for the said Daniel, and for none other."

The release referred to, and incorporated in the third count of the answer, is as follows:

"WHEREAS, Daniel Forker was elected treasurer of Tama county, Iowa, under the pledge that he would pay his deputy out of his salary as treasurer; and whereas, certain persons, for the purpose of injuring me, have reported that I would in some manner attempt to collect pay for my deputy, or that said deputy would in some manner attempt to collect pay for his services:

"Now this agreement witnesseth that Daniel Forker and Samuel Forker, by these presents, do hereby fully and completely release said Tama county from any and all claims which we, or either of us, might or would have against said county for the services of said deputy treasurer; and neither of us will ever make any claim against said county in any way and manner for said services, or any part thereof, for the years 1874 and 1875. And I authorize and direct the Auditor

of Tama county to file and preserve this agreement for the benefit of this county.

"Dated this September 12, 1875.

"DANIEL FORKER, *Treasurer*,

"SAMUEL FORKER, *Deputy Treasurer*.

"Filed in my office September 13, 1875.

"J. A. BOWDLE, *Auditor*."

The cause was tried to a jury and a verdict was returned for the plaintiff for $1,208. The defendant appeals.

The cause was before us on a former appeal from the sustaining of a demurrer to the answer. See 46 Iowa, 522.

*Hubbard, Clark & Deacon* and *Ebersole & Willett*, for appellant.

*Stivers & Leland*, for the appellee.

DAY, J.—I. The defendant urges that the court erred in refusing to give certain instructions asked. The abstract states that "after the evidence and the arguments of counsel were concluded, the defendant asked the court to give to the jury each of seven instructions written in pencil on six leaves of paper fastened together at the top * * * . Each and all of which said instructions so asked by the defendant the court then and there refused to give, and wrote on the margin of the first of the leaves so attached together these words, 'Instructions one to seven all refused. Defendant excepts. John McKean, Judge.' To which refusal and ruling the defendant then and there duly excepted."

1. The appellee insists that error cannot be assigned upon the refusal to give these instructions, because they were not

1. PRACTICE: instructions asked: writing.

asked in writing. Section 2784 of the Code provides: "All instructions asked, and the charge of the court, shall be in writing." It is claimed that instructions written in pencil do not comply with this provision. The statute does not provide that the writing shall

be made with ink. In *Geary v. Physic*, 5 B. & C., 239, it was held that the indorsement of a promissory note might be made in pencil. See authorities cited in Parsons on Notes and Bills, page 21, note *y*. We think this position of the appellee is untenable.

2. It is claimed that the exceptions taken to the refusal to give the instructions asked are not sufficiently specific

2. ——: ——: to authorize a review of these rulings. All the
exceptions.     authorities cited by appellee refer to exceptions

to instructions given. A different rule applies to an exception to a refusal to give instructions asked. In such case by asking the instructions the court's attention is directed to each proposition contained in them, and a general exception to the ruling on such as are refused is sufficient. *Davenport Gas Light & Coke Co. v. City of Davenport*, 13 Iowa, 229.

3. It is insisted that the refusal to give the instructions asked cannot be reviewed because the court did not write on

3. ——: ——: the margin of each instruction not given the word
refusal.         "refused," as provided in section 2786 of the

Code. The ruling on the margin of the first of the six leaves attached together is made applicable to all the instructions asked, and is a substantial compliance with the statute.

II. The defendant assigns as error the refusal of the court to give the fourth instruction asked, which is as follows:

"You will first inquire whether Samuel Forker has been paid for his services. If you find from the testimony that

4. PAYMENT:       Daniel Forker, the treasurer, paid his deputy,
by stranger:      Samuel Forker, for his services before the assign-
accord and
satisfaction.     ment of the account to plaintiff, this constitutes a

good payment, and you will find for the defendant."

This instruction was warranted by the pleadings and the evidence, and we think it should have been given. If the deputy treasurer has been once paid for his services, it seems clear that neither he nor his assignee should recover therefor again. And this is true, if the payment was made by the treasurer, even if he was not, primarily, liable for the payment for

the services of his deputy. The be*ter sustained doctrine of the law now is that an accord and satisfaction, moving from a stranger, or person having no pecuniary interest in the subject matter, if accepted in satisfaction of the debt, constitutes a good defense in an action against the original debtor. *Leavitt v. Morrow*, 6 Ohio, N. S., 71, contains a very full and exhaustive examination of this question, and reviews the case of *Grymes v. Blofield*, Cro. Eliz., 541, announcing a contrary doctrine. In the course of this opinion it is said: "It requires powers of discrimination looking far beyond the justice of the case to see the reason of the rule that accord and satisfaction, although moving from a stranger, yet accepted by the creditor, and set up in the plea of the defendant as a discharge of the debt, does not constitute a legal defense to the action." And further: "When the creditor has actually received and accepted the contribution in satisfaction of the debt, to allow him to maintain an action on the same debt afterward would seem to shock the ordinary sense of justice of every man."

III. The defendant asked the court to instruct the jury as follows:

"If Samuel Forker has not been paid, you will then inquire whether he executed the release set up by the defendant. If you find from the evidence that he did execute the release, and that at the time he so executed it he knew the purpose for which it was executed to be such as set forth in the reply of the plaintiff, viz: to corruptly and wrongfully influence the voters of Tama county, then he is *particeps criminis* to an immoral and unlawful act, and the plaintiff cannot recover. The services having been fully performed and the release executed, prior to the assignment to plaintiff, and prior to the commencement of this action, neither law nor good morals will permit the parties to invalidate a release which imports a consideration by showing the moral turpitude of the parties signing it." The court refused to give this instruction, and instructed the jury as follows: "If you find and believe from a preponderance of the evidence

that the plaintiff's assignor, at the time he executed the written release in controversy, knew that it was done corruptly, for the purpose of influencing the voters of the defendant at the ensuing election in and to the election of his brother as treasurer of the defendant, and for no other or good consideration, then the said release is wholly inoperative and of no effect. But if you believe and find that, at the date of the release, the defendant was indebted to the said Samuel Forker, and that he voluntarily released and discharged the same without a corrupt purpose as aforesaid, the release will be operative and good in law." The action of the court in giving this instruction, and in refusing to give the one asked, is assigned as error. In our opinion the instruction asked should have been given, and the one given is. erroneous. The release imports a consideration, and operates as a discharge of the defendant, unless it can be shown that the release was given without consideration. The plaintiff, in order to show such want of consideration, alleges, and seeks to prove, in effect, that the release was executed for the purpose of bribing voters, and securing an election to a public office. It is well settled that the law will leave all who share in the guilt of an illegal or immoral transaction where it finds them, and will not lend its aid to enforce the contract while executory, nor interfere to rescind the contract and recover the consideration when executed. In the *Inhabitants of Wooster v. Eaton*, 11 Mass., 378, the following language is employed:

"It appears to be the settled law in England, and we are satisfied that it is also the law here, that where two parties agree in violating the laws of the land, the court will not entertain the claim of either party against the other for the fruits of such an unlawful bargain. If one holds the obligation or promise of the other, to pay him money, or do any other valuable act on account of such illegal transaction, the party defendant may expose the nature of the transaction to the court, and the law will say, 'Our forms and rules are established to protect the innocent and vindicate the injured,

not to aid offenders in the execution of their unjust projects, and if the party who has foolishly paid his money repents his folly and brings his action to recover it back, the same law will say to him, you have paid the price of your wickedness, and you must not have the aid of the law to rid you of an inconvenience which is a suitable punishment for your offense.'" To the same effect is *White v. Hunter*, 23 N. H., 128. See, also, *Williamson v. Chicago, Rock Island & Pacific Railroad Company, ante,* 126. This doctrine, which is applicable to cases where the parties are in *pari delicto*, must, *a fortiori*, apply to a case like the present, in which it does not appear that the defendant was a partaker in the unlawful purpose.

The plaintiff cites many cases wherein a party sued upon an agreement has been permitted to show its illegal or immoral character in defense to the action. That a defendant should be allowed to make such defense follows from the rule that the law leaves parties to an illegal contract where it finds them, and extends no aid to either. But in this case the plaintiff seeks to show the illegality in the release, and to rid himself of the effects of it, not as a defense to any action, but to open the way for affirmative relief against the county. That he cannot do so, we think the authorities to which we have already referred abundantly show. For the errors discussed the judgment is

REVERSED.