## CHARLESTON.

CRUMLISH'S ADM'R *v.* CENT. IMP. CO., *et al.*

(Jamison's Appeal.)

Submitted June 8, 1893.—Decided December 6, 1893.

1. PAYMENT—ACTION.

A stranger paying the debt of another without request can not sustain an action at law against such other unless that other has in some way ratified such payment.

2. PAYMENT—DEBTOR AND CREDITOR.

Such payment by a stranger, if accepted as such by the credi-

tor, discharges the debt, so far as the creditor is concerned, and also as to the debtor, if he ratify it.

3. PAYMENT—SUIT IN EQUITY.

A stranger who pays a debt without request by the debtor, when his payment is not ratified by the debtor, may bring a suit in equity praying relief in the alternative; that is, that if the debtor do not ratify such payment, the debt may be enforced in his favor as its equitable assignee, or, if so ratified, that he be decreed repayment of the amount paid for the use of the debtor.

4. PAYMENT—DEBTOR AND CREDITOR—ASSIGNMENT.

The stranger, when he pays the debt of another, may take an assignment of it from the creditor and enforce the debt against the debtor; and if, when he pays, the creditor agrees to assign him the debt, though no assignment in writing be made, the stranger will be in equity regarded as the equitable assignee of the debt, and the transaction will be regarded equivalent to a purchase of the debt.

5. JUDGMENT.

It is well settled that the judgment of a sister state must be accorded in this state the same faith and credit which it has in the state where rendered.

6. JUDGMENT.

When such judgment is sought to be enforced here, our courts may inquire into the jurisdiction of the court rendering the judgment, and, if it appear that the court had not jurisdiction, the judgment will be *held* void here ; otherwise, it is valid and binding in this state.

7. FOREIGN JUDGMENT.

A judgment in a court of a sister state without service of process in any manner and without appearance will be *held* void in this state.

8. QUANTUM MERUIT—CORPORATION—OFFICERS.

Under the law of Pennsylvania the president of a private corporation, created by that state, can not recover from the corporation upon a *quantum meruit* for official services there rendered in the absence of any by-law or resolution of the directors allowing compensation. Nor can one, who is treasurer and secretary of the corporation and a stockholder and director, recover on a *quantum meruit* for his official services without such by-law or resolution. The law of that state raises no promise on the part of the corporation in such cases, and the question whether in such cases there is an implied promise, depends on the law of that state.

9. CONTRACT—LEX LOCI—LAWS.

The obligation of a contract made and to be performed in another state is tested by the law of that state.

BARTON & BOYD, U. L. BOYCE, W. M. STEWART, Jr., and

GEORGE BAYLOR for appellants, cited: 27 W. Va. 187; 2
Watts & S. 190; 104 Pa. St. 399; 30 W. Va. 43; Code, c.
53, s. 59; 85 Pa. St. 25; Const. U. S. Art. IV, sec. 1; 7
Cra. 481, 548; 2 Bl. Judgments § 856 *et seq.;* 28 W. Va.
167; 74 Pa. 300; 43 Pa. 278; 3 Watts & S. 28; 2 Sm.
Lead. Cas. (6th Ed.) 821; 7 Pa. 279; 11 Pa. 220; 10 Md.
268; 32 W. Va. 773; 49 Pa. St. 118; 25 Pa. St. 337; 29
Pa. St. 534; 134 Pa. St. 384; 23 Am. & Eng. Corp. Cas.
612; 8 Kan. 101; 8 W. N. C. 367; 2 Heisk. 354; 6 So.
Rep. 907; 11 S. & R. 238; 4 W. & S. 38; 5 W. & S. 264;
32 Pa. St. 78; 148 Pa. St. 15; 2 Watts 493; 4 Watts 274;
71 Pa. St. 85; 5 S. & R. 211; 2 Whar. 9; 54 Pa. St. 120;
4 W. & S. 237; 10 Harris 74; 7 S. & R. 269; Brews. Pr.
Pa. 204; 27 Pa. St. 479; 52 N. J. L. 10; 21 W. Va. 119;
18 Atl. Rep. 1095; 52 N. J. L. 10; 1 Litt. 118.

F. P. CLARK for appellees:

I.— *On the point that an officer of a corporation can not be personally interested in any transaction in which his company is
concerned and that any profits which he may realize in any
such case he holds as trustee for the stockholders.*—Tay. Priv.
Corp. §§ 629, 630; 1 Mor. Law Priv. Corp. §§ 516–520;
25 W. Va. 789; 30 W. Va. 443; 59 Me. 277; 112 Mass.
195; 86 Mo. 475; 89 Mo. 445; 16 W. Va. 32, 95; 25
W. Va. 56.

II.— *On the point that a judgment can not be revived against a
dissolved corporation.*—Mo. Priv. Corp. § 1031; 1 Rob.
(Va.) 499; 2 Wat. Law Corp. Vol. 2 § 434; Tay. Priv.
Corp. § 435–437; 85 Pa. St. 25.

III.— *On the point that an officer of a corporation can not recover
for services rendered his company, unless he proves an express
agreement providing therefor.*—49 Pa. St. 118; 134 Pa. St.
353; Tay. Priv. Corp. §§ 646–647; Code, 499; 29 Pa.
St. 536; Beach Priv. Corp. § 208; 19 Am. & Eng. Corp.
Cas. 165; S. C. 14 On. Rep. 211.

IV.—*And especially that these claimants can not recover under
the evidence in this case.*—14 Am. & Eng. Corp. Cas. 73;
Tay. Priv. Corp (2d Ed.) § 628; 19 Mo. App. Rep. 353.

BRANNON, JUDGE:

In a suit in equity in the Circuit Court of Jefferson

county by H. H. Crumlish's administrators against the Central Improvement Company there was a fund for payment of creditors of that company and then for division among stockholders. A commissioner was directed to ascertain the debts having right to be paid out of the fund. Various demands were presented before the commissioner for audit as debts; and among them was a judgment in favor of B. K. Jamison & Co. against the Central Improvement Company, an account in favor of R. D. Barclay against same company, and an account in favor of John P. Green against same, which three demands having been disallowed by the commissioner and court, Jamison & Co. and Barclay and Green united in this appeal.

## THE JAMISON JUDGMENT.

A judgment was rendered in 1877 in the court of common pleas, No. 3, of the county of Philadelphia, Pa., in favor of B. K. Jamison & Co. against the Central Improvement Company for twenty five thousand one hundred and sixty eight dollars and eighty five cents and costs; and afterwards, in 1890 upon a writ of *scire facias* upon this judgment another judgment was rendered by the same court for twenty six thousand three hundred and seventy eight dollars and eight cents and costs. Jamison & Co. and U. L. Boyce and the Fidelity Insurance Trust & Safe Deposit Company each claimed the right to said judgment before the commissioner; and the Norfolk & Western Railroad Company being a large owner of stock in the Central Improvement Company pleaded payment.

Jamison & Co. and Boyce having excepted to the report and appealed, what we have to decide is whether they have any cause to complain of the refusal to allow them the judgment.

Jamison & Co. by process on said first judgment had attached two hundred and fifty thousand dollars of second mortgage bonds and one hundrad and seventy five thousand dollars of income bonds of the Shenandoah Valley Railroad Company, held in the hands of a third party for the benefit of the Central Improvement Company. The Shenandoah Valley Railroad Company desiring to make a contract for its completion and make another mortgage to

raise money to complete it, and desiring to cancel and retire the bonds so attached, Boyce, the vice president of the Shenandoah Valley Railroad Company, opened negotiations with Jamison & Co. looking to securing those bonds, and Jamison & Co. expressed their willingness to take any step which would get their money advanced to the Shenandoah Valley Railroad Company represented by said judgment. Boyce made an arrangement with E. W. Clark & Co., bankers—who were financial agents of the Shenandoah Valley Railroad Company and wished to obtain said bonds for cancellation out of the way of a new series—to furnish the money.

Thereupon, on July 12, 1879, Jamison & Co. and E. W. Clark & Co. made a written agreement providing that Jamison & Co. should transfer to Clark & Co. all their right, title and interest in and to the bonds aforesaid as also some others; that Jamison & Co should proceed to get judgment upon their attachments, levy on said securities, and sell the same so as to pass title to the purchaser; that, if they should not be bid up to a figure above Jamison & Co.'s judgment, Jamison & Co. were to buy them at the sale, and transfer them to Clark & Co.; that "the said E. W. Clark & Co. are to pay B. K. Jamison & Co. the amount of their judgment against the Central Improvement Company with interest and costs, the amount of said judgment being twenty five thousand one hundred and sixty eight dollars and eighty five cents, with interest from July 10, 1877, the said payment to be made as follows: Ten thousand dollars in cash, and the balance in the notes of E. W. Clark & Co., drawn in equal amounts," etc.

The said bonds were sold to Jamison & Co. under said attachments at eleven thousand dollars, which was credited on the judgment, and Jamison & Co. transferred the bonds to Clark & Co., and received from them the ten thousand dollars cash, and their notes in full payment of the amount of said judgment. By reason of said agreement the commissioner reports the judgment as paid "so far as claimant is concerned;" that is, Jamison & Co. The only object of Jamison & Co. being to get their money, and the language of the writing being, "the said E. W. Clark & Co. are to

pay (note the word "pay") B. K. Jamison & Co. the amount
of their judgment," these facts lead me to the conclusion
that the parties contemplated it as a payment, so far as
Jamison & Co. were concerned.

But this payment was made by a stranger, without re-
quest or ratification by the debtor, so far as appears. Does
it satisfy the judgment? As it seems to me, the answer de-
pends upon whether you mean as to the creditor or debtor.
It remains a correct legal proposition to the present, that
one man, who is under no obligation to pay the debt of
another, can not without his request officiously pay that
other's debt and charge him with it. If the debtor ratify
such payment, the debt is discharged, and he becomes lia-
ble to the stranger for money paid to his use. If he re-
fuse to ratify it, he disclaims the payment and the debt
stands unpaid as to him. In the one case the stranger
would at law sue the debtor for money paid to his use; in
the other enforce the debt in the creditor's name for his use.
If his payment is not ratified, he may go into equity pray-
ing that, if the debtor ratify it said debtor may be decreed
to repay him, or, if the debtor do not ratify the payment,
that the debt be treated as unpaid as between him and the
debtor, and that it be enforced in his favor as an equitable
assignee. *Neely* v. *Jones*, 16 W. Va. 625; *Moore* v. *Ligon*,
22 W. Va. 292; *Beard* v. *Arbuckle*, 19 W. Va. 133.

But how as to the creditor? When a stranger pays him
the debt of a third party without the request of such third
party, as in this case, can the creditor say the debt is yet
unpaid and enforce it against the debtor, as is attempted
to be done by Jamison & Co.? Can he accept such pay-
ment and say, because it was made by a stranger, it is no
payment? Is his acceptance not an estoppel by conduct *in
pais*, as to him?

There has been a difference of opinion in this matter.
The old English case of *Grymes* v. *Blofield*, Cro. Eliz. 541
(decided in Elizabeth's reign) is the parent of the cases
holding that even the creditor accepting payment from a
stranger may repudiate, and still enforce his demand as un-
paid. That case is said to have decided that a plea of
accord and satisfaction by a stranger is not good, while

Rolle. Abr. 471 (condition F.) says it was decided just the other way. Denman, C. J. questioned its authority in. *Thurman* v. *Wild*, 39 E. C. L. 145. Opposite holding has been made in England in *Hawkshaw* v. *Rawlings*, 1 Strange, 24. Its authority is questioned at the close of the opinion by Cresswell, J., in *Jones* v. *Broadhurst*, 67 E. C. L. 197, as contrary to an ancient decision in 36 Hen. VI. and against reason and justice. Parke, B., seemed to think it law in *Simpson* v. *Eggington*, 10 Exch. 845. It was followed in *Edgcombe* v. *Rodd*, 5 East, 294, and *Stark* v. *Thompson*, 3 T. B. Mon. 296. Lord Coke held the satisfaction good. Co. Litt. 206b, 207a. See 5 Reb. Pr. (New) 884; 7 Rob. Pr. (New) 548. The cases of *Goodwin* v. *Cremer*, 83 E. C. L. 757, and *Kemp* v. *Balls*, 28 Eng. Law & Eq. 498, seem to hold that payment must be made by a third person as agent for and on account of debtor with his assent or ratification. In New York old cases held this doctrine. *Clow* v. *Borst*, 6 Johns, 37; *Bleakley* v. *White*, 4 Paige, 654. But later, in *Wellington* v. *Kelly*, 84 N. Y. 543, Andrews, J., said that the old cases were doubtful, but had not been overruled, but it was not necessary in that case to say whether it should longer be regarded as law, and the sylabus makes a *quære* on the point. It was held in *Harrison* v. *Hicks*, 1 Port. (Ala.) 423, that "payment of a debt, though made by one not a party to the contract, and though the assent of the debtor to the payment does not appear, is still the extinguishment of the demand." The opinion says that, as between the person paying and him for whose benefit it was paid, a question might arise whether it was voluntary, which would depend on circumstances of previous request or subsequent express or implied. This doctrine is sustained by *Martin* v. *Quinn*, 37 Cal. 55; *Gray* v. *Herman*, 75 Wis. 453 (44 N. W. Rep. 248); *Cain* v. *Bryant*, 15 Heisk. 45; *Leavitt* v. *Morrow*, 6 Ohio St. 71; *Webster* v. *Wyser*, 1 Stew. (Ala.) 184; *Harvey* v. *Tama Co.*, 53 Ia. 228 (5 N. W. Rep. 130). Bish. Cont. §2 11, holds that, if payment "be accepted by creditor in discharge of debt, it has that effect." Sec. 2 Whart. Cont. § 1008.

It seems utterly unjust and repugnant to reason, that a creditor accepting payment from a stranger of the third

person's debt should be allowed to maintain an action against the debtor pleading and thereby ratifying such payment, on the technical theory that he is a stranger to the contract. The creditor has himself for this purpose allowed him to make himself a *quasi* party, and consents to treat him so, so far as payment is concerned. To regard the debt paid, so far as he is concerned, is but to hold him to the result of his own act. Shall he collect the debt again? In that case can the stranger recover back? What matters it to the creditor who pays? As the Supreme Courts of Wisconsin and Ohio in cases above cited said, this doctrine is against common sense and justice. It does not at all infringe the rule that one can not at law make another his debtor without request to allow such payment to satisfy the debt as to the creditor; and this Court, while recognizing the rule that one can not officiously pay the debt of another and sue him at law, unless he has ratified it, by allowing the stranger to go into equity and get repayment makes the payment in the eyes of a court of equity operate to satisfy the creditor, and render the stranger a creditor of the debtor. *Neeley* v. *Jones*, 16 W. Va. 625. I know that in that case it is held that, "if a payment by a stranger is neither ratified nor authorized by the debtor, it will not be held to be a discharge of the debt;" but, though this point is general, that was a case of the stranger seeking to make the debtor repay, and the case and opinion intended to lay down the rule at law only as between the stranger paying and the debtor, not as between the creditor and debtor. So I hold that, when Jamison & Co. received the money for this judgment, it operated as a discharge as to them.

But it is said that such payment, though a payment, is inoperative, because, after it was made, a writ of *scire facias* issued to revive the judgment, and a judgment was rendered thereon, that the plaintiffs recover their debt, and thus such payment amounts to nothing. This judgment is not, as with us, according to common-law, a simple award of execution, but a judgment *quod recuperet*, as in an original action. Such a judgment would be void here by some authorities, 2 Bart. Law Pr. 1031; *Lavell* v. *McCurdy*, 77 Va. 763. I have entertained doubts whether it would be void,

as distinguished from voidable, though I have not fully examined the subject. But in Pennsylvania a *scire facias* is a substitute for an action of debt, and the judgment is properly *quod recuperet*. *Duff* v. *Wynkoop*, 74 Pa. St. 300; 1 Black, Judgm. § 499. We must under the United States constitution give it the same faith and credit here which it has there. *Black* v. *Smith*, 13 W. Va. 780; *Gilchrist* v. *Oil Land Co.* 21 W. Va. 115; *Stewart* v. *Stewart*, 27 W. Va. 167. If it were a valid judgment, it would nullify the payment above spoken of, on familiar principles. Such would be its effect in Pennsylvania, and it is to its effect there that we look. *Custer* v. *Detterer*, 3 Watts & S. 28; *McVeah* v. *Little*, 7 Pa. St. 279; *Potter* v. *Hartnett*, 148 Pa. St. 15 (23 Atl. 1007); *Mills* v. *Duryee*, 7 Cranch 481.

But while a judgment of a sister state, if valid, is given here the same effect it has there, yet consistently with this rule we can look into its record to see whether it had jurisdiction of the defendant; and looking into the record of this judgment we find no service whatever of the *scire facias* personal or by return of *nihil*, or any appearance, and therefore the judgment is void, as would be a judgment here for that cause, *Gilchrist* v. *Oil Land Co.* 21 W. Va. 115; *Stewart* v. *Stewart*, 27 W. Va. 167; *D'Arcy* v. *Ketchum*, 11 How. 165; *Thompson* v. *Whitman*, 18 Wall. 457; *Knowles* v. *Gaslight, etc. Co.*, 19 Wall. 88; *Guthrie* v. *Lowry*, 84 Pa. St. 533; *Steel* v. *Smith*, 7 Watts & S. 447; *Noble* v. *Oil Co.*, 79 Pa. St. 354; Story, Const. § 1297; 1 Greenl. Ev. § 548. This is a good reason for disallowing the judgment.

Argument is made, that in Pennsylvania judgment upon two returns of *nihil habet* is good, and as effective as a return of *scire feci*. As I find no return whatever of the *scire facias*, I have not so closely examined this question as otherwise I would have done. There seems some authority for the proposition that two returns of *nihil* will sustain a judgment *in personam*. *Compher* v. *Anawalt*, 2 Watts, 490. The cases cited by counsel (*Warder* v. *Tainter*, 4 Watts, 274; *Taylor* v. *Young*, 71 Pa St. 85; *Colley* v. *Lattimer*, 5 Serg. & R. 211; *Edmonson* v. *Nichols*, 22 Pa. St. 74; *Chambers* v. *Carson*, 2 Whart. 9; *Hartman* v. *Ogborn*, 54 Pa. St. 120; *Allison* v. *Rankin*, 7 Serg. & R. 269) were cases of *scire facias*

*sur mortgage*, as to which the rule of judgment of foreclos-
ure upon two *nihils* seems established in Pennsylvania.
The practice of taking judgment on two returns of *nihil* is
properly perhaps confined to *scire facias* upon a mortgage.
The case of *Compher* v. *Anawalt, supra*, says, in the opinion,
that it is liable to abuse; and I notice, in the case of *Custer*
v. *Detterer*, 3 Watts & S. 28 (decided only seven years after
the former case) the opinion says that, as a judgment on
*scire facias* is a new judgment, two returns of *nihil* will not
do.   I should doubt as to personal judgments.  But though
such a judgment would be good in Pennsylvania, it does
not follow that it wobld be good here, for the Supreme
Court of Pennsylvania, in *Steel* v. *Smith*, 7 Watts & S. 447,
in an opinion delivered by the eminent Chief Justice Gib-
son held, that a judgment of Louisiana on attachment of
property and summons served on one of the joint owners,
which by the Louisiana law was good as to all defendants,
was a nullity in the courts of Pennsylvania as to parties
not served.   The only Pennsylvania statute to which I
have access provides that service of process on a corpora-
tion shall be on its president or other chief officer, cashier,
treasurer, secretary or chief clerk.  No service of any kind
appears here.  For this reason the judgment was properly
disallowed.

No plea of *nul tiel* record was necessary.   It is a chancery
suit and concerns the audit of debts on reference before a
master; and when the judgment-creditors presented the
judgment, adverse interests could contest it on any legal
ground without formal plea.   I remark that it was not this
*scire facias* judgment which was considered on the appeal
reported in 33 W. Va. 761 (11 S. E. Rep. 58) but the origi-
nal one.

But let us suppose that the judgments were valid, and
that, treating Clark & Co's payment simply as a payment, it
would be cut off by the judgment so the payment could not
now be pleaded.  What then?  Jamison & Co., are no
longer its owners, but Clark & Co. are assignees of it, and
they are not asking its allowance, but Jamison & Co. are
claiming for their own use.  When Clark & Co. paid it,
the law implied that Jamison & Co. would assign it to

them, and without assignment actual a court of equity treats them as its equitable owners. The case of *Neely* v. *Jones*, 16 W. Va. 625, in point 4, of the syllabus clearly supports this position. Boyce's evidence uncontradicted is that Jamison & Co. in the agreement which they made with him, promised to assign the judgment to him, and their attorney did transmit him a copy of the judgment. Now, if this evidence is not forbidden from consideration by the execution of the writing between Clark & Co. and Jamison & Co., then either Clark & Co. or Boyce have an express agreement to assign, tantamount to an assignment, and, though no actual assignment be made, equity regards it as an equitable assignment; and this is the letter of point 5 in *Neely* v. *Jones, supra,* and *Beard* v. *Arbuckle,* 19 W. Va. 135.

It may be with some force said that, as between Jamison & Co. and Boyce, the assignment should go to Boyce, and then there would be no ground for saying that the oral agreement to assign would be excluded by the writing. In fact, Jamison & Co. admit in their petition for the appeal that they assigned it to Boyce; so this court ought not to decree it to them. Thus, I think, law excludes the allowance of this judgment to Jamison & Co., and this conclusion accords with the real justice of the case. Jamison & Co. only wanted the amount they advanced to the Central Improvement Company. They got it. They do not deny, but admit, they received all the company owed them, but they want now to hold it as collateral for a merely personal loan to Boyce.

And now as to U. L. Boyce's claim to said Jamison & Co.'s judgment. He has no title to it, to his own use. Any shadow of interest that may be vested in him was for other use than his own: First. He negotiated for the acquirement of it from Jamison & Co. for Clark & Co. as financial agents of the Shenandoah Valley Railroad Company, whose vice president Boyce was at that very time, and in whose service and interest he acted touching this judgment. Clark & Co. paid for the judgment, and took the contract in their name. Boyce explicitly says as a witness and in a letter to Doran that he was to get assignment of it

and transfer it to the parties furnishing the money, and that Clark & Co. furnished the money. Never was a resulting trust more plainly established than that any show of technical right in Boyce was for the use of Clark & Co. And then further consider, that Clark & Co., were agents of the Shennandoah Valley Railroad Company and Boyce its vice president. And that he was acting for it, he does not deny, but admits; and a receipt to his company for hotel bill on the trip to acquire the judgment confirms it.

Thus we conclude that neither Jamison & Co. nor Boyce have right to this judgment. It is urged by counsel that the Shenandoah Valley Railroad Company, in a certain answer, stated that a balance was due on this judgment, treating it thus as not paid. If it belonged to the Fidelity Company, under its mortgage, could the Shenandoah Valley Railroad Company, by this admission, prejudice the right of that company? It could not. But, if the Shenandoah Valley Railroad Company owned it, it could say, with entire consistency with the fact that Clark & Co. had paid it as regards Jamison & Co., that a balance was due on it from the Central Improvement Company, as it had never paid it. As assignee it could say that the Central Improvement Company yet owed a balance.

## BARCLAY'S AND GREEN'S DEMANDS.

Barclay filed before the commissioner, and asked payment out of the fund, an account for ten thousand dollars, for services for four years and one month as president of the Central Improvement Company, and Green filed an account for six thousand two hundred and fifty dollars for two and a half years' service as treasurer and secretary. Both these gentlemen were stockholders and directors of the company. The commissioner rejected the claims.

The Central Improvement Company is a Pennsylvania corporation having its *habitat* and chief office there, and there the services were performed and were to be paid for, if at all; and if any contract were implied by law to pay compensation for service of those officers of the corporation, it would be a Pennsylvania contract. Hence the law of that state operates upon the case specially. We must therefore see whether the law of Pennsylvania would raise

an implied contract to pay for such services. *Klinck* v. *Price* 4 W. Va. 4; *Stevens* v. *Brown*, 20 W. Va. 450; *Hefflebower* v. *Detrich*, 27 W. Va. 16. There was no express contract to pay for such services, and, if there can be any recovery therefor, it must be on the theory that the law raises an implied promise to pay for the services.

I think the case of *Kilpatrick* v. *Bridge Co.*, 49 Pa. St. 118, uncontrollably decides against the allowance of these accounts. It holds that "corporations are not liable on a *quantum meruit* for services performed by their officers. There must be an express contract for compensation, or there can be no recovery." In that case, Sersill claimed for service as president and Kilpatrick as treasurer, as in this case, and the court held that they could not recover. The court said:

"The salary or compensation of corporate officers is usually fixed by a by-law or by a resolution either of the directors or stockholders, but, where no salary has been fixed, none can be recovered. Corporate offices are usually filled by the chief promoters of the corporation, whose interests in the stock or in other incidental advantages is supposed to be a motive for executing the duties of the office without compensation, and this presumption prevails until overcome be an express prearrangement of salary. Hence, we held in *Association* v. *Stonemetz*, 29 Pa. St. 534, as a general principle, that a director of a corporation, elected to serve without compensation, could not recover in an action against the company for services rendered in that capacity, though a subsequent resolution of the board, agreeing to pay him for past services, was shown. * * * * And the rule is just as applicable to presidents and treasurers and other officers as to directors. * * * It is well the law is so. Corporate officers have ample opportunities to adjust and fix their compensation before they render service, and no great mischief is likely to result from compelling them to do so. But if, on the other hand, actions are to be maintained by corporate officers for services, which, however faithful and valuable, were not rendered on the foot of an express contract, there would be no limitation to corporate liabilities, and stockholders would be devoured by officers."

In the later case of *Martindale* v. *Wilson-Cass Co.*, 134 Pa. St. 348 (19 Atl. 680) it is held: "The general rule on the subject of compensation to the directors of a private corporation is that they are not entitled to compensation for official services unless it is provided for in the corporate charter or by-laws. In the absence of such provision, a director or president of such corporation can not recover pay for official services, when no agreement for compensation preceded them, no presumption of such agreement arising from their performance."

A by-law of the Central Improvement Company provided that the directors "shall have power to appoint all other officer or agents of the company, and fix the compensation and define the duties of all their officers or agents," but the directors never fixed any compensation. This was a mere power, given to be exercised or not, as the directors might choose, and does not itself give compensation; and the very fact that the directors, having this power, never exercised it, negatives the idea that any compensation was intended. *In re Bolt & Iron Co.*, 14 Ont. 211.

So it is clear that, under the Pennsylvania law, these officers can recover nothing.

Though not necessary to go further, my examination has led me to the conclusion that the decisions in Pennsylvania reflect the true rule applicable nearly everywhere, in denying pay without express provision or contract, not only to the president, but a treasurer or secretary, when stockholders or directors. The authorities have led my mind to the conclusion that the law raises no implied promise to pay compensation to directors, president or vice president of a private corporation in the absence of provision in by-law or order of the directors. They are trustees charged with the funds, and can not recover on a *quantum meruit*. *Gridley* v. *Railroad Co.*, 71 Ill. 200; *Cheeney* v. *Same*, 68 Ill. 570; *Association* v. *Meredith*, 49 Md. 389; *Bank* v. *Elliott*, 55 Ia. 104 (7 N. W. Rep. 470); *Sawyer* v. *Bank*, 6 Allen, 207; *Railroad Co.* v. *Ketchum*, 27 Conn. 180; *Ogden* v. *Murray*, 39 N. Y. 202; 1 Beach Priv. Cory. § 208.

And if the treasurer, secretary or other executive officer be a stockholder or director, no such promise is raised by

law in his favor; but, if not, then the law does raise such promise, and presume that pay was intended from the fact of appointment, and he ;may get compensation. *Smith* v. *Railroad Co..* 102 N. Y. 190 (6 N. E. Rep. 397); *Holder* v. *Railroad Co.*, 71 Ill. 106, 109; *Cheeney* v. *Railroad Co.*, 68 Ill. 570; 1 Beach. Priv. Corp. § 200; note to *Grundy* v. *Coal Co.*, 23 Am. & Eng. Corp. Cas. 616 (9 S. W. Rep. 414 Of course, I do not here speak of the mere employes of corporations, they being entitled to compensation.

Therefore, so much of the decree of March 2, 1891, as rejects the claim of B. K. Jamison & Co. and U. L. Boyce to said judgment, and the said accounts of R. D. Barclay and John P. Green, is affirmed.