## FIRST NAT. BANK OF ALLEN v. DAUGHERTY.

No. 17003—Opinion Filed Nov. 9, 1926.

(Syllabus.)

1. **Corporations — Nonliability to Pay for Volunteer Services of Officers Who Are Directors.**

Officers of a corporation, who are also directors, and who, without any agreement, express or implied, with the corporation or its owners, or their representatives, have voluntarily rendered their services, can recover no back pay or compensation therefor.

2. **Appeal and Error — Review—Sufficiency of Evidence in Law Action.**

In an action at law a verdict and judgment will not be disturbed by the Supreme Court if there is any competent evidence reasonably tending to support the same, but, if there is no competent evidence upon which a judgment might reasonably be based, such judgment will be reversed.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by J. D. Daugherty against the First National Bank of Allen. Judgment for plaintiff, and defendant brings error. Reversed.

Robert Wimbish and W. C. Duncan, for plaintiff in error.

B. C. King and W. A. Delaney, Jr., for defendant in error.

RILEY, J. This is an action on contract to recover a salary for services rendered as president of a banking corporation. The parties are mentioned as they appeared below. The plaintiff. Daugherty, seeks to recover $5,000 as a reasonable salary for having served as president and managing officer of the First National Bank of Allen from January, 1922, until February, 1924. He was president of said bank from 1917 until February, 1924. but claimed no compensation as such officer until January, 1922. The said bank is the defendant in the action. The minutes of

the meeting of the directors of the bank held on January 10, 1922, discloses the following relative to the employment of plaintiff:

"The election of officers was declared in order and H. T. Riddle nominated the following, which were elected on ballot: J. D. Daugherty, president; Hugh Stokes, cashier. The salaries of the officers were fixed as follows: Hugh A. Stokes. cashier, $200 per month; other officers' or clerks' salaries were to be fixed from time to time as officers above shall see fit. J. D. Daugherty, Cashier of Board, Hugh A. Stokes, Secretary."

The next year the minutes of February 3, 1923, contained the same words and figures relative to salaries, with this addition: "Jack Moore, Asst. Cashier—$100.00, per month" —and relative to J. L. Adams, who was employed for the balance of the year, whose special duty it was to look after chattel business. the following appears: "his salary to be paid or adjusted satisfactorily on January 1, 1924."

At the meeting of directors in March, 1923, it appears that Adams was elected vice president and the following relative to his salary appears: "The salary for Mr. Adams as vice president to be settled for at their discretion, January 1, 1924."

The plaintiff contends that, notwithstanding the minutes, he was employed and promised a salary, the amount of which was not determined. He shows that the original notes of the minutes were transcribed, placed in permanent form and thereafter signed by the officers, and that then the original notes were destroyed, and upon this showing he predicates his testimony as to what actually transpired at the directors' meeting of January 10, 1922, relative to his alleged contract of employment.

It is admitted that plaintiff was the active managing head of the institution until January, 1924, when his connections with the bank were severed. and his stock in the bank was lost to him because of his financial inability to meet a third assessment of 100 per cent. of the capital stock levied to relieve the financial condition of the bank. There is no dispute as to the plaintiff's services being worth the amount named in the judgment of the court below.

The minutes do not show that the directors ever agreed or promised to pay, or paid, plaintiff anything for his services. In July, 1923, plaintiff signed and verified and reported to. the Comptroller of Currency the condition of said bank, and herein plaintiff testified that he did not disclose in said report any liability of the bank to him for salary

from January 1, 1922, to the date of the report, viz., January 30, 1923.

This being an action of law, we look to the evidence to ascertain whether there is any competent evidence reasonably tending to support the judgment. To support the judgment there must be some evidence establishing the existence of an express contract, for plaintiff cannot, under the general rule, recover on a quantum meruit basis. Kilpatrick v. Penrose Ferry Bridge Co. (Pa.) 88 Am. Dec. 497; Crumlish v. Central Impr. Co., 38 W. Va. 390, 18 S. E. 456, 23 L. R. A. 120, 45 Am. St. Rep. 872. All authorities agree that the general rule is that directors and trustees of corporations presumptively serve without compensation, and that they are entitled to no salary or other compensation for performing the usual and ordinary duties pertaining to the office of director or trustee in the absence of some express agreement or provision to that effect. 4 Thompson on Corporations, par. 4682; Ellis et al. v. Ward et al., 137 Ill. 509, 25 N. E. 530.

"The rule is the same with respect to the president of a corporation." Steele v. Gold Fissure Gold Mining Co., 42 Colo. 529, 95 Pac. 349; Kilpatrick v. Penrose Ferry & Bridge Co., supra; Silverton Mining Co. v. Haughwout, 44 Colo. 173, 96 Pac. 975; Natl. Loan, etc., Co. v. Rockland Co., 94 Fed. 335, 36 C. C. A. 370.

As stated in National Loan Company v. Rockland Company, supra:

"From the employment of an ordinary servant, the law implies a contract to pay him. From the service of a director, the implication is that he serves gratuitously. The latter presumption prevails, in the absence of an understanding or an agreement to the contrary, when directors are discharging the duties of other officers of the corporation to which they are chosen by the directory, such as those of president, secretary, and treasurer." Silverton Mining Co. v. Houghwout, supra; Kleinschmidt v. American Mining Co. (Mont.) 139 Pac. 785.

In Ellis et al. v. Ward et al., supra, it is said:

"The law will not imply a promise on the part of a private corporation to pay its officers for the performance of their usual duties." Citizens' Natl. Bank v. Elliott, 55 Iowa, 104, 7 N. W. 470, 39 Am. Rep. 167.

In Kilpatrick v. Penrose Ferry Bridge Co., supra, it is said:

"The salary or compensation of corporate officers is usually fixed by a by-law or by a resolution, either of the directors or stockholders, but where no salary has been fixed none can be recovered."

Corporate offices are usually filled by those chiefly interested in the welfare of such institutions by reason of interest in stock or other advantages and such interests are presumed to be the motive for executing duties of office without compensation.

In Goodin v. Dixie Portland Cement Co. (W. Va.) 90 S. E. 544, L. R. A. 1917F, p. 308, the following appears:

"Corporate officers have ample opportunity to adjust and fix their compensation before they render their services, and no great mischief is likely to result from compelling them to do so. But if, on the other hand, actions are to be maintained by corporate officers for services which, however faithful and valuable, were not rendered on the foot of an express contract, there would be no limitation to corporate liabilities, and stockholders would be devoured by officers." Kilpatrick v. Penrose Ferry Bridge Co., supra.

In 14A Corpus Juris, 136, the rule is announced that:

"A director or other fiduciary officer of a corporation presumptively serves without compensation. He is entitled to compensation for performing the usual and ordinary duties of his office when and only when there is a valid express agreement therefor; he cannot recover on an implied contract." Spalding v. Enid Cemetery Ass'n, 76 Okla. 180, 183 Pac. 579.

The general rule is not changed or affected by the fact that there was a general understanding among the directors themselves that such services would be compensated. Ellis et al. v. Ward, supra; 2 Cook on Corporations (6th Ed.) p. 657.

The defendant in error urges the rule announced in Fletcher on Corporations, vol. 4, p. 4018, as follows:

"The rule forbidding payment for past services does not apply where there is an understanding that the services are to be paid for, or where circumstances are such as to raise an implied contract."

We accept this rule in part, for in Spalding v. Enid Cemetery Association, supra, Mr. Justice Kane, speaking for this court, said:

"The mere omission to fix the salary does not deprive the officer rendering services for the corporation of his right to recover; the law in proper cases raising an assumpsit on the part of the company to pay a reasonable compensation for his services. We think the foregoing authority fully sustains the right of the superintendent and secretary to compensation for the services rendered in the circumstances disclosed by the record."

It will be noted above that we say we accept the rule by Fletcher in part. By that we intend saying we fully accept the rule

so far as to be applied where there is a contract to pay an indefinite amount. As heretofore recited, mere employment of an ordinary servant implies a contract to pay him. Such implication does not follow with the election of a stockholder or director to the place of president or managing officer. We rather think that in cases such as the Spalding Case the corporation, by estoppel, should not be heard to deny the existence of a contract, for there, for a number of years, the officer made claims for services, which claims were allowed by the board of directors and the actions in allowing such claims were regularly entered in the minutes showing the amount and purpose. There the contract was established and implied, though it was after the first payment and the first minutes recording payment, the amount and purpose; the terms were so stated in words, as well as relations of the parties, that an estoppel to deny would be manifestly just and equitable.

The decisive point in this case is whether there is any evidence reasonably tending to support the prerequisite fact of hire for pay, presumptively found by the verdict of the jury, or, in other words, is there any evidence establishing that the board agreed to pay plaintiff a salary fixed or indefinite in amount? We think not, for by reason of plaintiff's evidence we find:

(1) The minutes by their silence as to such a contract compel this conclusion.

(2) The long service of plaintiff without salary payment augments against the conclusion of the jury.

(3) The witness Hugh Stokes' direct evidence is against such a conclusion.

(4) The fact that plaintiff served as president from 1917 to 1922, admitting that he then served without agreement or claim of salary, and the fact that the service upon which this claim is based likewise began without definite agreement, on the part of the bank, expressed or implied, regarding salary.

The evidence nearest toward supporting the fact of an agreement of pay on the part of the bank was that of the witness Means, which is as follows:

"Q. Was the salary discussed? A. They said they wanted him; that they considered him the man for the place and wanted him to take charge down there. Q. To refresh your recollection, state if it was not agreed that the salary was to be arrived at later. A. My recollection is that he was to devote his whole time, and if he did not devote his whole time he was to get pay for what he done."

This evidence is most flimsy in the light of the whole as introduced by plaintiff and it does not establish an agreement with the bank to pay. It rather tends to establish the witness' own intention, view, or expectation. It does not show a positive action by the directors, but indicates an impression gained by the witness. The only other testimony of this trend is by the plaintiff himself when he says:

"A. They went ahead and discussed the bank condition and decided whether to put me or Doctor Means in to help the bank on. Mr. Douglass said I was the biggest stockholder down there, and he suggested putting me in to take charge or help see after the loans. Q. They discussed that there before the directors? A. Yes, sir. Q. Did they finally agree which one should go down there? A. They decided on me. Q. Was that acted on in the usual manner by the directors meeting? Tell what was done up there. A. The motion seconded to put me in as manager of the bank and oversee the loans, and it went through the bank meeting. Mr. Douglass himself said I knew the value of stuff well enough and to go on with it. He asked me how much I was worth, and I to'd him I did not know how much, and said, 'I will charge what is reasonable.' Q. They agreed on that, that you should go down there and go in the bank? A. Yes, sir."

The expression by Douglass said to be given was at Shawnee; a quorum was not present and the meeting adjourned. The board meeting at which plaintiff was elected president and made managing officer was held at Allen. H. T. Douglass, according to the minutes, was not present and could, therefore, have given no individual expression personally or as director which would constitute an act or agreement of the board of directors.

The evidence here adduced does not show a contract, expressed or implied, such as to warrant a conclusion that the board agreed to pay plaintiff for his services.

There are assignments of error as to instructions given, as to the admissibility of parol evidence without the proper predicate for the purpose of overcoming the prima facie presumption of the correctness of the minutes, and other contentions; some of these are meritorious assignments, but in view of our opinion that there is no competent evidence reasonably tending to support the verdict of the jury, we need not consider such other assignments. The cause is remanded, with directions to render judg-

ment for defendant, the First National Bank of Allen.

NICHOLSON. C. J., BRANSON, V. C. J., and MASON. LESTER. PHELPS, HUNT. and CLARK, JJ., concur.

Note.—See under (1) 14a C. J. p. 136, §1906; anno. L. R. A. 1917F, 308; 11 R. C. L. pp. 462-464; 2 R. C. L. Supp. pp. 389 et seq.; 4 R. C. L. Supp. 486. (2) 4 C. J. p. 854, §2834; p. 856 §2835; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 81; 5 R. C. L. Supp. p. 91.