## Bryant *vs.* Proctor.

### APPEAL FROM BOYLE CIRCUIT.

Case 17.

14bm450
112   881
115   647

14bm450
112   881
115   647

14bm450
136    27

1. It is generally true that the payment of a *less sum* cannot be pleaded and relied upon in bar of an action for a *larger* sum due, nor as an accord and satisfaction. To make such a plea valid the thing received must be something to which the creditor was not before entitled, not part of that to which he was entitled.

2. Three individuals entered into a partnership, two of whom were to go to California and trade and search for gold for the term of three years, at which time a division of the profits was to be made. One of the two declines the trip, the other goes on, and is successful, and making some $25,000. Held, that by the refusal of the one to go to California the contract was no longer binding on the other two. The fact that one of the contracting parties, who had made advances to the other two who were to go to California to trade, &c., brought suit for the advances made before the expiration of the three years, was evidence of *his* abandonment of the contract, and an exoneration of the other party who did adventure, and he was not entitled to any part of the profits made by the latter in the adventure.

3. Though a party make a compromise under a mistake of the facts, yet, if after he is fully informed of the facts, he receive the compromise money, he will be adjudged to have waived any advantage he might have had from his former ignorance of facts.

In October, 1849, James M. Bryant, Archibald Bryant, and Benjamin Proctor, entered into the following agreement:

"*Article of agreement between James M. Bryant, Archibald Bryant, and Benjamin Proctor*. James M. Bryant agrees, on his part, to furnish said Archibald Bryant and Benjamin Proctor one thousand dollars for the purpose mentioned below, viz: Said Archibald Bryant and Benjamin Proctor agree, upon their part, to proceed to California, and use all diligence and industry in trading, digging, and procuring of gold, and prosecuting any other branch of business they may deem profitable, for the space of three years from the

time they leave Danville, or longer if they should still further agree, and after the one thousand dollars is subtracted from the whole amount of funds thus accumulated, it is agreed and understood that the funds, so accumulated, should be equally divided among the parties thus contracting. Said Bryant and Proctor, previous to their departure, are to effect an insurance upon their life, which insurance is to be mortgaged to said J. M. Bryant, to secure him in the payment of one thousand dollars thus furnished them, in case of either of their deaths, before the matters here agreed upon can be accomplished. And it is further understood, if said Bryant and Proctor should entirely fail in this their undertaking, to accumulate any means, then said J. M. Bryant is to lose entirely the whole amount thus put in as starting capital. It is further understood: if the said Proctor and A. Bryant should misapply the funds thus entrusted with them to any other purpose but what is mentioned in this contract, then they are to be each and separately bound for the amount they may thus misapply."

On the same day that the parties executed this article of agreement, A. Bryant and Proctor executed their separate notes to J. M. Bryant for $333 33 each, for the one-third part of the one thousand dollars advanced by him, to be used by them in the contemplated adventure.

In February, 1850, Proctor and A. Bryant left Danville, Kentucky, for California. On their arrival at New Orleans, on the way to the place of their destination, A. Bryant abandoned the enterprize and returned home. Proctor went to California by himself, and having accumulated there about $25,000, returned home to Danville in November, 1852, before the expiration of the time specified in the agreement of the parties.

At the time that Proctor entered into this agreement he was much involved in debt, and generally considered as having been actually insolvent. James M. Bryant, with whom the agreement was made, was

his largest creditor, and to him he owed a very considerable debt for a man of his circumstances and condition.

During Proctor's absence, James M. Bryant instituted a suit in chancery against him, in which he sought the collection of two notes, one being the debt of $333 33, the one-third part of the capital he had advanced, for which, as already mentioned, Proctor had executed his note. This suit was commenced in June, 1851. Its object was to attach and sell the property of the defendant, and have the proceeds applied to the payment of the debts due to the complainant, on the ground, as alleged in the bill, that the defendant, whose place of residence was in this state, had been absent from the state, and from the county of his residence, so long that one term of the circuit court for that county had intervened, and that the ordinary process of the law could not be executed upon him. Other suits were subsequently brought by James M. Bryant against Proctor during the absence of the latter.

On the 8th of September, 1852, whilst these suits were still pending, Mrs. Proctor, acting as the agent of her absent husband, made a settlement and compromise with James M. Bryant, of all demands and claims of every description which the latter had against Proctor, and a receipt to that effect was executed by Bryant, in which he acknowledged the payment by Proctor of $2,350, and in which it was recited that for the additional sum of $738 49 a lien was reserved on a negro man named Sam, and when said sum was paid it would be in full discharge of all claims and demands of every description which he held against Proctor.

After the return of Proctor from California he paid the additional sum mentioned in the receipt, for which a lien was reserved on the negro man Sam, and it was accepted by Bryant without any objection, and without any complaint by him that the settlement

and compromise were unjust, or had been fraudulently obtained.

He subsequently instituted this action, to set aside the contract of compromise aforesaid, on the ground that Mrs. Proctor had, as her husband's agent, procured it by making false representations of the extent of the profits of her husband's business in California, of his condition and circumstances, and of his intention to remain in California and not to return to this state. He alleged that the agreement of compromise was entered into in ignorance of his rights, induced by these misrepresentations of Mrs. Proctor, and that he only received about five hundred dollars in satisfaction of his part of the profits in the California adventure.

The court below dismissed the plaintiff's petition, and he has appealed to this court.

S. Turner and J. J. Crittenden, for appellants—

The decree in this case is erroneous and should be reversed:

1. Because the compromise presents no legitimate bar to a recovery by Bryant under the contract of October, 1849. The same being induced by the false and fraudulent representations of Mrs. Proctor, the agent of her husband, in representing to Bryant that her husband, the appellee, had not been so successful in California as had been represented, and that she was paying out to him, Bryant, her own money. And fraudulently concealing from Bryant the amount of money which had been remitted to her by her husband from California.

2. That their had been no confirmation of the compromise after it was made, and all the facts known, as was supposed, as all the payments then made, were of moneys really due to Bryant, and there was no consideration. See Kent's Com., vol. 3, sec. 3, page 24.

3. That the decree should be reversed, and a decree in favor of Bryant for one-third of the profits of the

partnership adventure, agreeably to the terms of the contract of October, 1849.

BELL, DUNLAP and HARLAN, for appellee—

The proof in the case shows—

1. That Bryant has failed to establish the charges of fraud, in suppression of truth or suggestion of falsehood.

2. That Bryant has, by acts and words, fully ratified the settlement and compromise of September, 1852, and has wholly failed to show a plausible pretext for annulling the papers executed by him in confirmation of that settlement. It is an executed contract of settlement, and the *onus* is upon Bryant to show why it should not be adhered to as binding.

When the agreement of October, 1849, was executed, Archibald Bryant and Benjamin Proctor each executed notes to Bryant for $333 33, being the proportion of each of the $1,000 outfit for the adventure; when, therefore, Bryant attempted to collect his note given by Proctor, by attachment in chancery, commenced in 1851, he treated the agreement of October, 1849, as at an end. By the contract, Proctor, and Archibald Bryant had the right to the use of the $1,000 for three years from February, 1850. J. M. Bryant thereby showed his disregard of the agreement of October, 1849, by his acts before yet sixteen months of the three years had expired.

When the compromise and settlement of 1852 was made, it was wholly uncertain whether, at the end of three years, there would be any profit or not. The consideration of the compromise was valid. The whole capital was at hazard, and Proctor had the right to hold it so for three years, and Bryant acted prudently in stipulating for its re-payment at ten per cent., and $500 as profits.

The contract contemplated that both Proctor and Archibald Bryant were to labor in California, which was the only way that money was to be made. We submit to the court, whether, when Archibald Bryant

withdrew from the enterprize, it was not a virtual dissolution of the partnership, if partnership it was, which we by no means admit.

If Proctor had made large profit at the date of the settlement, Bryant had not then a right to demand any part of it—the right to hold on to any profit then made was Proctor's right, as a means of making more profit.

The main question made by appellant is that of fraud charged in the settlement. This is fully and flatly denied by the answer, and is not proved, and therefore cannot avail.

But it clearly appears from the proof in the case, that after Proctor got home to Kentucky, and Bryant was apprized of the fact, and that he had on deposit in the Danville bank from $20,000 to $30,000, that Bryant received the balance of the money due to him, and gave the receipt of 23d November, 1852, and then dismissed his suits in the Boyle circuit court.

Can this court, assuming that there was fraud in original settlement, disturb it, tainted as it would be by fraud on one side, and usury on the other? The capital was to be paid back without interest. It was in fact paid back with ten per cent. interest. In *Story on Contracts*, 3 *Ed.*, sec. 497, the principle is clearly stated, that if a party, with knowledge of a fraud, acquiesce in the contract expressly, or do any act importing an intention to stand by it, or remain silent under circumstances which plainly indicate a continuing assent thereto, he cannot avoid it.

We think the settlement such an one as a prudent man, under the circumstances, would make. That it was made fairly, without fraud, and ratified, and should not be disturbed, and that the decree of the circuit court ought to be affirmed.

July 4.

Judge SIMPSON delivered the opinion of the court.

1. It is generally true that the payment of

Fraud was the only ground relied upon by the plaintiff in the pleadings, to set aside the agreement of compromise. But it is now contended, on his be-

half, that he has a clear right to one-third of the amount realized by Proctor from his business in California, and that the payment of a less sum than he was entitled to cannot be relied upon either as payment or as an accord and satisfaction, to defeat this right. It is undoubtedly the well settled law, that the payment of a smaller or less sum cannot in general be pleaded in bar of an action for a larger sum *due;* nor can it be relied upon as an accord and satisfaction, because, to make it valid as such, the thing received for the debt or demand must be something to which the creditor was not before entitled, and not merely a part of the thing to the whole of which he had a right at the time of the payment. But this rule of law has no application in this case for two reasons—First. At the time the agreement of compromise was entered into, the three years for which the partnership was to continue had not expired, Proctor had a right to retain and use the whole fund until the end of the term; Bryant had no right to demand the payment of any part of it until that time. The use of it, in the meantime, might have resulted in its total loss. During the continuance of the term the interest of the parties was uncertain and contingent. Either might sell or transfer his interest to the other, and the sum paid could not affect the validity of such a sale, if made. The rule of law referred to applies to a certain demand, due and owing at the time, and not to one that is prospective and contingent.

Second. Bryant's rights, under the contract entered into by the parties, were, to say the least of them, of a *doubtful* character, and as such were proper matters of compromise. It it be conceded, that the contract created a partnership, and it was one that a court of equity would carry into effect, notwithstanding its apparently hard and oppressive character, still, as one of the partners abandoned the enterprize, and did not on his part comply with the terms of the contract, the others were under no obligations to abide by it, unless they choose to do so. J. M. Bryant was

*a less sum* cannot be pleaded and relied upon in bar of an action for a *larger* sum due, nor as an accord and satisfaction. To make such a plea valid the thing received must be something to which the creditor was not before entitled, not part of that to which he was entitled.

2. Three individuals entered into a partnership, two of whom were to go to California and trade and search for gold for the term of 3 years, at which time a division of the profits was to be made. One of the two declines the trip, the other goes

BRYANT
*vs.*
PROCTOR.

on, and is suc-
cessful in mak-
ing some $25,-
000. Held, that
by the refusal
of the one to
go to Califor-
nia the contract
was no longer
binding on the
other two. The
fact that one of
the contracting
parties, who
had made ad-
vances to the
other two who
were to go to
California to
trade, &c., bro't
suit for the ad-
vances made be-
fore the expira-
tion of the three
years, was evi-
dence of *his* a-
bandonment of
the contract,
and an exonera-
tion of the oth-
er party who
did adventure,
and was not en-
titled to any
part of the prof-
its made by the
latter in the ad-
venture.

entitled to the services of both the other partners, and was not bound to accept the services of one instead of that of both of them, even if Proctor himself consent- ed to the arrangement by which the services of A. Bryant were dispensed with. It might then be con- tended with great plausibility, that J. M. Bryant, by the suit which he brought in June, 1851, to collect that part of the capital advanced by him, for which Proctor had executed his note, and the reasons assign- ed by him in his bill to enable him to maintain the suit, and to attach the defendant's property, had man- ifested his determination not to abide by the agree- ment of partnership, but inasmuch as it had not been complied with by all the parties, to disregard it alto- gether; for, unless he assumed this ground, he had no right to demand the re-payment of any part of the capital he had advanced to Proctor. It is true, that none of the parties could dissolve the partnership without the consent of all of them, but as one had failed to comply with its terms, it was not obligatory upon the others without their assent—they were only entitled to a remedy against the partner who had vio- lated the agreement. Under these circumstances, the claim of J. M. Bryant to one-third of the fund accu- mulated by Proctor, not being clear and indisputable, but one that might have been contested on plausible grounds, was a proper subject of compromise. Un- less, therefore, the agreement of settlement and com- promise can be vacated upon the ground of fraud, J. M. Bryant is not entitled to any relief, and his peti- tion was properly dismissed by the court below.

The ignorance of Bryant in relation to Proctor's success in California, and the misrepresentations made to him on the subject by Proctor's wife, are re- lied upon as constituting the chief elements of the alleged fraud. The testimony in the cause leaves, in our opinion, no room to doubt that Bryant was at the time he made the agreement of compromise fully apprized that the enterprize had been successful, and that Proctor had accumulated in California a large

sum of money. Consequently, he was not deceived by any of the representations on this subject made to him by Mrs. Proctor. He knew as much about the matter as she did, and could not have been mislead or deceived by any of her attempted artifices, or by any of the statements she made to him in relation to her husband's success in California, even if she did try to create the impression that it was not so great as it had been represented to be. It does not certainly appear that Mrs. Proctor knew that her husband intended to return to Kentucky at the time he did, or that she did not seriously contemplate going to California herself at the time she stated that she was going. It appears from the testimony that Proctor's return was accelerated, if not induced altogether, by the state of his health, and we are inclined to the opinion that his wife had not been informed of his intention to return at the time the compromise was made, and that his return was not caused by any information he received that a compromise with Bryant had been effected. Besides, it appears that Proctor, when he came to Kentucky, did not intend to remain here, but designed returning again to California, and was actually making arrangements for that purpose when this suit was commenced.

The promise which Mrs. Proctor made to Bryant, to use her influence with her husband when he came back, to induce him to let Bryant have three thousand dollars ten years, without interest, tends to prove two facts inconsistent with the ground assumed by the plaintiff. If, as the parties seemed to suppose, it was in the power of Proctor to make a loan of three thousand dollars without interest, the irresistible inference would be that he must have made, and had under his control, a very considerable sum of money. And as the influence which was promised was to be exercised when Proctor came back, it is evident that his return was contemplated by both parties. This promise, which really, according to its terms, amounted to nothing, could not have had the least weight

with Bryant, who is proved to be a man of business, in inducing him to enter into the compromise. He knew how much weight to attach to such a promise, unobligatory in its nature, and depending for its results upon the will of another person. It ought not and could not have had any effect in producing the compromise. It proves, however, that the parties themselves not only expected Proctor to return, but believed that he would bring back with him a large sum of money.

3. Though a party make a compromise under a mistake of the facts; yet if after he is fully informed of the facts, and receive the compromise money, he will be adjudged to have waived any advantage he might have had from his former ignorance of facts.

But if Bryant entered into the agreement of compromise under a misconception of the true state of facts, in relation to Proctor's success, and his intention to return to this state, he confirmed the agreement after Proctor's return, and after he had been fully apprised of the amount of money he brought back with him, by receiving from him, without objection, the balance of the sum which, according to the terms of the compromise, he was to receive, in satisfaction of his claim against him. We cannot doubt, on consideration of all the testimony on the subject, that Bryant knew when he received this balance from Proctor, the amount of money that had been brought back by the latter on his return from California.

The only reason that has been urged why this act on the part of Bryant, should not be regarded as a confirmation of the agreement of compromise previously made, is that the sum received by him from Proctor, was due to him, independent of the compromise, and consequently the act of receiving it cannot operate as a confirmation of that agreement. But an examination of the debt due to him, exclusive of the amount he obtained by the compromise, will prove satisfactorily, that the whole of that debt had been fully discharged by the payment made by Mrs. Proctor, at the time the agreement was entered into, and that there was nothing due to him at the time he received the money from Proctor, if the compromise be disregarded. To establish this conclusion, it is only necessary to advert to the fact, that in the estimate

made by the parties on which the compromise was based, Bryant was allowed the sum of $1,285 54, being the one thousand dollars advanced by him as capital, and ten per cent. per annum interest thereon during the time that Proctor had used it. Now he was not then entitled to any part of this sum. He had no claim against Proctor for the return of the capital advanced, until the term of three years had expired, nor would he then have had any right to any interest on it. If this sum be excluded from the estimate, it is apparent that all the balance due to Bryant had been more than paid. It was by the compromise alone that he had a right to demand this sum, and of course the amount that was paid to him by Proctor was due to him only in consequence of the agreement of compromise. And if it be conceded, that as Proctor had returned home Bryant might have required the payment of the thousand dollars, still it will be perceived, if a calculation be made, that the sum of money which Mrs. Proctor had paid to Bryant had nearly paid off the one thousand dollars, capital, and also the debts which Proctor owed to Bryant, with legal interest thereon, so that the larger part of the sum which Bryant received from Proctor after his return home was due to him only in consequence of the compromise.

The note for $333 33, which Bryant held on Proctor, was given for one-third part of the capital of one thousand dollars, and consequently, as Bryant was allowed in the settlement the whole of the capital which he had advanced, he had no right to the amount of this note, and therefore it was surrendered by him to Mrs. Proctor, as it should have been. The note for $273 was left out of the settlement, and the reason of this omission does not appear, but, as it was surrendered to Mrs. Proctor by Bryant at the time of the settlement, and when he surrendered to her the note for $333 33, the presumption arises that the consideration of both notes was embraced in some part of the settlement, and for that or some other reason the notes were properly excluded from the settlement. If,

however, the note for $273 should be included in making an estimate of the debts already due to Bryant, the interest allowed upon the thousand dollars, and the extra interest allowed upon the other debts, would more than discharge it. Independent of the compromise, Bryant had no right to any interest on the sum of one thousand dollars advanced by him as capital, and consequently he received in this item of interest alone the sum of $285 54, under the agreement of compromise.

Then, if it be conceded that Bryant had been imposed upon by the artifices of Mrs. Proctor, and induced to believe that her husband did not intend to return to Kentucky, but would remain in California, and that acting under the influence of that belief, and the apprehension created by it that he would never get anything from Proctor, had entered into the agreement of compromise as the best arrangement he could make under such circumstances, why should he not be bound by his own acts, recognizing its validity, and carrying it into effect, after he had been fully apprized of the imposition that had been practiced upon him? He knew that Proctor had returned, and he had been informed of the exact amount of money he had realized whilst absent. If, when he entered into the compromise, he had been deceived in relation to these matters, he must certainly have been made sensible of the imposition by a knowledge of these facts. Still he did not hesitate to receive the balance due him, under the agreement of compromise, and that agreement was virtually ratified and confirmed by the joint act of himself and Proctor. He thus, according to the well settled doctrine upon the subject, waived any right that he might have previously had, to vacate the contract, because its execution had been fraudulently procured.

But we cannot believe that Bryant was deceived or imposed upon by anything said to him by Mrs. Proctor. He was a shrewd, intelligent, business man. He knew that Proctor was very much embarrassed,

and had but little property when he left Kentucky, and he must have believed that the money which Mrs. Proctor had was sent to her by her husband, because there was no other source from whence she could have obtained it. If Mrs. Proctor intimated that the time of the return of her husband was doubtful, or that he did not intend to return at all, Bryant knew the object of such suggestions, and how much confidence to place in them. But, as heretofore remarked, the terms of the compromise itself evince that Proctor's return was contemplated by the parties, and consequently prove that no serious effort could have been made by Mrs. Proctor to impress Bryant with the belief that her husband intended to remain in California. Bryant knew that the result of the adventure was still involved in great uncertainty, notwithstanding Proctor's success up to that time. He might engage in some speculation before the three years expired, which would eventuate in the entire loss of the whole of his accumulations; he might die there, or on his return home, and that event might produce the same consequences. Or he might be robbed of all his gold, either there or on his route home, and left without anything to bring back with him when he did return. These views no doubt suggested themselves to Bryant, and had more influence in inducing him to enter into the compromise than any representations made by Mrs. Proctor. He preferred a certainty to an uncertainty. He was doing well, realizing a good profit on his investment, and terminating a risking adventure, from which possibly nothing might ever be realized. He felt and expressed himself well pleased with the settlement after it was made, and never manifested any dissatisfaction with it until and after it had been fully consummated by Proctor and himself.

Under all these circumstances, and in view of all the facts proved in the cause, and for the reasons herein expressed, we are clearly of the opinion that the plaintiff was not entitled to any relief, and that the

Jones' Ex. &c.
vs.
Jones' Widow, &c.    judgment of the court below, by which his petition was dismissed, is correct.

Wherefore, the judgment is affirmed.