A. MATHENEY, *Appellee*, v. THE CITY OF EL DORADO, *Appellant*.

No. 16,580.

SYLLABUS BY THE COURT.

1. ACCORD AND SATISFACTION—*Requisites.* To constitute an accord and satisfaction, the agreement that a smaller sum shall be accepted in discharge of a larger one originally claimed must have been entered into by the parties understandingly and with unity of purpose.

2. —————— *Proof—Authority of Person Accepting Tender.* A contractor undertook to build a bridge for a city and arranged with a banker to furnish the money necessary to carry on the work, and he gave the banker a writing to the effect that all warrants for the construction of the bridge should be issued to and cashed by the banker. A dispute arose between the city and the contractor as to the amount due for certain extra work done on the bridge. Later an allowance was made by the city in full payment of the work, which the contractor refused to accept. He then informed the banker that the allowance must not be accepted. A warrant was drawn by the city for the allowance and placed in the bank, where the funds of the city were kept, in the custody of the son of the banker, who was deputy city treasurer. Some time afterward the banker, without other authority than the writing mentioned, drew the money on the warrant, but neither the contractor nor the mayor and council of the city had any knowledge that the warrant had been cashed until long after this action to recover the amount of the claim had been brought. *Held,* that the banker had no authority to make settlements for the contractor, and that the drawing of the money on the warrant did not operate as an accord and satisfaction of the original claim nor preclude the contractor from recovering the entire debt.

3. MUNICIPAL CORPORATIONS—*Authority of Agent—Ratification —Estoppel.* The city having appointed a superintendent to supervise the building of the bridge, and having accepted the work done under his supervision, as well as the bridge, is not in a position to deny liability for the work done under the direction of the superintendent because of irregularity in the appointment of the superintendent. (*City of Ellsworth v. Rossiter*, 46 Kan. 237.)

4. JURY AND JURORS—*Special Findings—Definiteness.* A party is entitled to have a jury make special findings of the ulti-

mate facts of the case, but has no right to ask for mere evidentiary matters nor that the jury shall file a bill of particulars as to each fact.

Appeal from Butler district court; GRANVILLE P. AIKMAN, judge. Opinion filed June 11, 1910. Affirmed.

*K. M. Geddes,* and *T. A. Kramer,* for the appellant.
*E. N. Smith, V. P. Mooney,* and *E. D. Stratford,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by A. Matheney to recover from the city of El Dorado for extra material and labor furnished in connection with the building of a bridge for the city in pursuance of a contract. On October 21, 1907, the city of El Dorado, by its mayor and council, made a contract with A. Matheney by which the city agreed to pay $3350 for the construction of a stone arch bridge in the city according to certain specifications. It provided that the sum mentioned should be paid for the "bridge proper," and that "all other work required by the council to be done shall be considered extra and shall be paid for at the following prices," specifying particular rates per cubic yard or foot for excavation and masonry. The material used and the manner of construction were "to be subject to the inspection and acceptance or rejection of the superintendent appointed by the mayor and council," and from time to time during the progress of the work the superintendent, as well as the mayor and council, ordered extra work to be done in connection with the building of the bridge. Matheney borrowed the money with which to furnish the material from J. E. Dunn, the president of a local bank, and to protect Dunn he gave the following instruction to the mayor:

"You are hereby authorized, instructed and directed to draw any and all warrants issued to me for work on

Central Avenue bridge in favor of J. E. Dunn. He is hereby authorized to receipt for, and cash, the same."

In accordance with the terms of the contract $3350 was paid by the city for the construction of the bridge proper. Much extra work was done, and Matheney filed with the city clerk claims amounting to $2713.50 for extra work and material, which included excavating, stone work, ornamental plates, a cement walk on the bridge, extra support for abutments, etc. The council questioned the amount of the bill, and after canvassing it for some time authorized the payment of $1982.93 in full settlement of the account. A warrant for this amount was delivered to Dunn, who, after holding it for some time, obtained the money on it. It was never accepted by Matheney as full settlement of the account, and he contends that Dunn did not so accept it, and, further, that he had no authority to do so. In this action to recover on his claim the jury found in favor of Matheney and awarded a verdict for $546.53, being the difference between the amount of the warrant and the amount due for the extra work and material.

The petition of Matheney, although challenged for uncertainty, appears to be sufficiently definite to advise the city of the nature of his claim and to meet the requirements in pleading.

The principal contention in the case is that under the pleadings and the evidence there was what amounted to an accord and satisfaction—a compromise and settlement of the controversy which precludes appellee from maintaining his action or recovering an additional amount. The city insists that when it made an allowance of $1982.93 as full payment of the extra work on the bridge and issued a warrant for that sum, which was cashed by Dunn, the original demand of Matheney was thereby satisfied and extinguished.

To operate as a satisfaction and discharge in cases of this kind the smaller sum must not only have been offered, but it must have been accepted with the under-

standing that it was in full satisfaction of the larger amount claimed. Was there a substitution of a later executed agreement for the earlier one? To make the later agreement effective it was necessary that the minds of the parties should meet, and that it should have all the essential elements of an ordinary contract. In *Harrison v. Henderson*, 67 Kan. 194, it was said:

"An accord and satisfaction is the result of an agreement between the parties, and, like all other agreements, must be consummated by a meeting of the minds of the parties, accompanied by a sufficient consideration. If the creditor is to be held to abate his claim against the debtor, it must be shown that he understood that he was doing so when he received the claimed consideration therefor." (Page 200.)

(See, also, 1 Cyc. 331.)

There is no accord as to a settlement unless the parties act understandingly and each has complete knowledge of the essential facts involved. There does not appear to have been an accord between the city and Matheney as to the discharge of the indebtedness for extra work and material. Matheney never consented to accept the money in discharge of his claim, and never authorized Dunn to make such an acceptance. When Matheney was informed by the council that it had only allowed a part of his claim he declined to accept the allowance and informed Dunn to that effect. The funds of the city appear to have been kept in Dunn's bank, and his son was deputy city treasurer. When the warrant was issued, on June 25, 1908, it was turned over to the son, who was acting for both the city and the bank. Dunn did not draw the money on the warrant until July 18, 1908, and he did so then without the knowledge of Matheney and after he had been told that it would not be accepted. Matheney did not learn that Dunn had drawn the money on the warrant until the holidays, several months after this action was begun. The mayor and council, it appears, were not aware that Dunn had obtained the money on the warrant until long after it

was cashed, for as late as November 12, 1908, they made Matheney an offer of $2200 on his claim. Aside from the direction of Matheney not to accept the allowance, Dunn had no authority to make compromises for Matheney. The only authority conferred on him was in the writing already quoted. It may be doubted if that writing related to warrants for extras or for more than those issued for the bridge proper, but, assuming that it did, he was certainly not vested with authority to make settlements between the city and Matheney. Apparently the sole purpose of the writing was to protect Dunn for the advancements made to Matheney during the progress of the work. It gave him no right to adjust disputes as to what was due on the contract, nor any authority except to receive warrants after disputes were adjusted and settlements made between the two contracting parties. Power to make settlements of that character by the acceptance of warrants or otherwise could not be exercised unless it was expressly conferred. The writing did not purport to make Dunn the agent of Matheney to settle controversies with the city, and there was nothing in the subsequent conduct of Matheney which precluded him from insisting on full payment of the entire debt.

Error is assigned on the admission of testimony to the effect that certain work was done by Matheney under the direction of a superintendent appointed by the mayor and council to superintend the building of the bridge. The contract between the parties contemplated the appointment of a superintendent by the city, and provided that Matheney should furnish material and perform work subject to the inspection and acceptance of the superintendent. It is a little late for the city to question its own authority for the appointment of a superintendent to oversee the building of the bridge. The mayor and council did appoint a superintendent, and he did direct the work, with the knowledge and approval of the city authorities. The city adopted the action of the superintendent, and, more than that, the

materials furnished and the work done by Matheney have been accepted by the city and its officers. It is therefore bound to pay for such material and work at the rates specified in the contract, and this notwithstanding the superintendent may have been irregularly appointed. (*City of Ellsworth v. Rossiter,* 46 Kan. 237; *Mound City v. Snoddy,* 53 Kan. 126; *Roberts v. St. Marys,* 78 Kan. 707.)

There are other objections to testimony, and there is some criticism of the instructions, but nothing substantial is found in any of them; and the evidence in the case appears to be sufficient to support the verdict by the jury.

Complaint is made that the jury were not required to answer more fully one of the special questions submitted. The question was, "Did he [Matheney] object to or disavow the action of said J. E. Dunn, and, if so, in what manner? State fully." The answer was, "Yes." Appellant insists that the jury should have been compelled to state at length what the disavowal was. There was no error in the refusal. In effect appellant asked for a recital of the evidence. A party is entitled to special findings as to ultimate facts, but has no right to ask for mere evidentiary matters nor to require the jury to file a bill of particulars on each fact.

It is finally contended that the court should in any event have divided the costs. This is based on an offer which was made to confess judgment after the action was begun. The offer was for $2200, and was manifestly made on the theory that the warrant had not been cashed and that no part of the claim for extras had been paid. The amount awarded by the jury was $546.53, and this, with the warrant previously cashed, amounted to $2529.46. As this sum was considerably more than the amount of the offer there was no reason for dividing the costs.

We find no error in the record, and therefore the judgment is affirmed.