No. 18,495.

THE PEOPLE'S STATE BANK OF WELLSVILLE, *Appellant,*
v. CHARLES DRYDEN et al. (S. S. LARRICK et al.,
*Appellees*).

### SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Sureties—Extension—Payment.* The evidence examined and held not to support a finding that an extension of the time of payment of a note was made upon a new consideration, or a finding that the note sued upon had been paid.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed January 10, 1914. Reversed.

*John T. Little,* and *C. L. Randall,* both of Olathe, for the appellant.

*J. W. Parker,* and *S. D. Scott,* both of Olathe, for the appellees.

The opinion of the court was delivered by

MASON, J.: The People's State Bank, of Wellsville, brought action against S. S. Larrick and H. S. Dryden, upon a note for $180.32. The defendants pleaded that the note had been paid, and also that they were sureties, and had been released by an extension of time granted without their knowledge to the principal, Charles Dryden. A jury returned a general verdict for the defendants, and also made a separate special finding in their favor upon each defense. The plaintiff appeals.

The note was due upon its face October 20, 1910. While it was in the possession of the plaintiff bank, its assistant cashier placed a memorandum upon it to the effect that it was "extended 60 days," and later mailed notices to the defendants stating that it would be due at the expiration of that time. The oral evidence on the subject tended to show an agreement that

the note should be paid at about that time, no precise date being specified, but the writings referred to doubtless justified the jury in finding, as they did, that a sixty-day extension was made. The jury were asked, "Was there anything paid or promised to be paid for the extension of time?" They answered, "We believe there was." All persons having any personal connection with the transaction testified fully concerning it, and there was nothing whatever in the testimony to indicate any new consideration for the extension or the time of payment. The memorandum on the note was not signed, and was, therefore, not such a written contract as under the statute (Gen. Stat. 1909, § 1644) to import a consideration. We think there was no evidence to support the finding that there was a valid consideration for the agreement to extend the time of payment, which must consequently be regarded as merely a voluntary promise to forbear action, which did not release the sureties.

The note sued on, with another for $113.50, was given originally to The Wellsville Bank, and the question whether it was paid depends upon whether a transaction which took place at the time of their maturity amounted to a payment of the notes by Charles Dryden with money borrowed by him for the purpose from the plaintiff, or to a purchase of them from the payee, by the plaintiff, acting through the agency of Charles Dryden. The following facts bearing upon the matter may be regarded as established, being either admitted or shown by evidence which is not seriously questioned:

Charles Dryden was the principal, and S. S. Larrick and H. S. Dryden the sureties, upon both notes. When they came due they were still held by The Wellsville Bank, the payee. Charles Dryden went to the plaintiff bank, stated the situation, and indicated his desire to have the notes taken care of. The plaintiff gave him a combined pass book and check book upon which

it entered a credit of the amount due upon the two notes, $293.82. He drew a check on the plaintiff for that amount and gave it to The Wellsville Bank, which in return gave him the notes, with the indorsement, "October 21st, 1910. Pay to the order of Charles Dryden without recourse. Wellsville Bank, J. T. Preshaw, Cashier." He at once delivered the notes to the plaintiff.

Officers of the plaintiff testified that they directed Charles Dryden to buy the notes for the bank; that one of them telephoned to The Wellsville Bank explaining that to be their purpose. The testimony of Charles Dryden was entirely consistent with this. He apparently had no very clear idea as to the proper form of words to be used to describe the transaction in its legal effect, but he plainly understood that the notes were to be kept alive as the property of the plaintiff, and therefore his real intention must be deemed to have been to buy the notes for the plaintiff.

The cashier of The Wellsville Bank testified that he called up the plaintiff on the telephone to inquire whether Dryden's check was good, but that nothing was said about the purchase of the notes; that Dryden said he was ready to pay them, but added that Mr. Reed, the cashier of the plaintiff bank, did n't want them canceled; that the witness responded by saying that Mr. Reed did n't have anything to do with it, but upon reflection concluded to place upon the notes the endorsement already described, and did so.

The decision of the jury must be deemed to have resolved all conflict of evidence or inference in favor of the defendants. The conversation over the telephone must therefore be regarded as eliminated. The question for determination is whether the undisputed facts, coupled with the evidence given by the cashier of The Wellsville Bank, justify a finding that the transaction referred to amounted to a payment of the notes. Although that witness said that he had no intention of

selling the notes to the plaintiff, he knew the plaintiff's cashier had requested that the notes should not be canceled, and he made the endorsement because of that request.  He testified: "At that time I did n't think as to what the object might be not to have them stamped [canceled], I just thought I would endorse the notes, pay to Mr. Charles Dryden without recourse and did so."  He was asked, "If you understood at the time . . . that the notes were paid why was it that you endorsed them as you did?"  He answered, "Simply because Mr. Dryden did n't want them stamped paid, and with the notes going out of our possession into the possession of Mr. Dryden, I wanted something to indicate that the Wellsville Bank was through with these notes."  Another witness called by the defendants testified that the cashier of The Wellsville Bank asked Dryden what Mr. Reed's idea was in not having the notes stamped paid, and that Dryden said he did n't know.

This court concludes that the fair inference from all the testimony is that the transaction amounted to a sale of the notes; that The Wellsville Bank was concerned only with the question of its own liability, and while having no specific purpose to sell the notes, in order to get its money acquiesced in the request that they be not canceled, and thereby consented that they should be kept alive.  Charles Dryden, of course, could not become the holder of the notes "in his own right" without effecting their discharge (Gen. Stat. 1909, § 5372, subdiv. 5), but upon all the evidence, if he bought the notes at all, he bought them for the plaintiff.

The jury seem to have attached some importance to the fact that at the time Charles Dryden made this arrangement with the plaintiff for the payment of his check to The Wellsville Bank, there was already on deposit with the plaintiff the sum of $150 subject to his check.  All the evidence concerning this deposit, however, was to the effect that it did not in fact belong

to him and was not used by him. It therefore does not affect the matter.

There is no reason to suppose that the facts in the case were not fully developed, and as the court is of the opinion that they constitute no defense to the note the judgment is reversed and the cause remanded with directions to render judgment for the plaintiff.