No. 20,096.

ODE SIGLER, *Appellant*, v. JOSEPH SIGLER, *Appellee.*

SYLLABUS. BY THE COURT.

1. ACCORD AND SATISFACTION—*Payment of Lesser Sum—Subsequent Action Not Barred—Rule—Foundation—Exceptions Enlarged—Modern Tendency of Courts.* The rule that a payment of a lesser sum accepted with the understanding that it shall be in full discharge of the entire debt will not bar an action to recover the balance unless made upon a new and distinct consideration, rests rather upon technical considerations than upon reason, and the strict adherence to it has often resulted in preventing justice and the enforcement of the real intent of the parties. The modern tendency of the courts has been to enlarge the exceptions to the rule in order to avoid its harshness and in order to carry into effect settlements, adjustments and compromises.

2. SAME—*Meeting of Minds—Consideration.* While the agreement that a smaller sum shall be accepted in discharge of a larger sum due, must be consummated by a meeting of the minds of the parties, (*Harrison v. Henderson*, 67 Kan. 194, 72 Pac. 875), it is sufficient if the smaller sum has been offered and accepted with the understanding that it is in full satisfaction of the debt, provided the agreement is accompanied by a sufficient consideration.

3. SAME—*New Agreement of Parties—In Person or Through Agent—Consideration—Elements.* Where it is shown that the minds of the parties, whether acting by themselves as principals or through others as agents, have met and agreed upon the proposition that the receipt of the lesser sum shall extinguish all right on the part of the creditor to exact further payment, any possible or probable benefit to the one, or loss or inconvenience to the other, will be held to constitute a consideration for the new agreement.

4. SAME—*Debtor May Act Through Agent—Consideration Accepted by Creditor—Debt Released.* A debtor may authorize a third person as his agent to make a satisfaction of his debt, and if what is given by the stranger is accepted in satisfaction by the creditor, who thereupon releases the debt, and the agent's act is authorized or subsequently ratified by the debtor, there will be a complete accord and satisfaction.

5. SAME—*Money Advanced by Agent of Debtor—Sufficient Consideration.* A sufficient consideration is shown for an agreement that a payment of a lesser sum shall be in full discharge of the entire debt, where, so far as shown by the evidence or findings, the money actually received by the creditor was advanced for the debtor by a third party who acted as his agent.

Sigler v. Sigler.

6. NEGOTIABLE INSTRUMENTS—*Past Due—Manner of Discharge—"In His Own Right."* Section 126 of the negotiable instruments law (Gen. Stat. 1909, § 5372), which enumerates the various ways in which negotiable instruments may be discharged, including (5) "when the principal debtor becomes the holder of the instrument at or after maturity in his own right," is construed, and the phrase "in his own right" is held to include a case where the maker of a promissory note, past due, authorizes a third person as his agent to purchase the note from the holder thereof, who, in consideration of the payment to him, by such agent, of a sum less than the amount due, assigns and transfers the note and a mortgage securing the same to the agent, who releases the mortgage and transfers the note to the maker upon being reimbursed by the latter, notwithstanding the fact that the holder of the note believes the agent is purchasing the note for himself. ·

7. SAME — *Maker Become Holder "In His Own Right."* Whether the transaction referred to in the preceding paragraph be considered as one in which the maker furnished the money to purchase the note through his agent, or as one in which the agent first purchased the note with his own funds and afterwards, upon being reimbursed by the maker, transferred it to the latter, the maker becomes the holder of the note after maturity "in his own right."

8. APPEAL AND ERROR—*Past Due Note—Sale and Assignment to Agent— Fraud Not Shown.* Upon the findings of fact it is held there was no showing of fraud in the transaction in which plaintiff, who held an over-due note against his brother, was induced to sell and assign the instrument to his brother's agent for a sum less than the amount due thereon.

Appeal from Trego district court; JACOB C. RUPPENTHAL, judge. Opinion filed July 8, 1916. Affirmed.

*Herman Long,* of Wa Keeney, for the appellant.

*Lee Monroe, James A. McClure,* and *C. M. Monroe,* all of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was to recover an alleged indebtedness. There were three causes of action, but the error complained of relates to the third cause of action, which was upon a promissory note. The jury returned a verdict in plaintiff's favor and made a number of findings of fact. The court approved the findings, but sustained defendant's motion for judgment on the pleadings, evidence and findings, and this is the ruling we are asked to review.

The answer admits the execution of the note but alleges that plaintiff is not the owner or holder of it; that prior to the commencement of the action he had sold, assigned and delivered to one C. M. Hutchison the note together with a mortgage given to secure its payment, and that thereafter defendant paid the note, and that the mortgage had been canceled and delivered to him by the holder; that the plaintiff had retained the moneys received by him for the sale of the note and had never tendered or offered to return the same.

The reply admitted the execution, delivery and assignment of the note and mortgage, but alleged that C. M. Hutchison's name was not written in the assignment of the mortgage at the time it was delivered, and that the transfer and assignment was made under the following circumstances: Defendant employed one R. C. Wilson to purchase the note and mortgage for him as cheaply as possible and agreed to provide a fund amounting to twelve hundred dollars or more with which to make the purchase; that thereupon Wilson, concealing from plaintiff the fact that he had been employed by and was acting for the defendant, negotiated with plaintiff for the purchase of the note and mortgage, and falsely and fraudulently represented to plaintiff that they were of very little value and would be difficult to collect; that the plaintiff believed these false representations and relied upon them; and that Wilson, for and on behalf of defendant, paid the plaintiff $400, and that plaintiff under these circumstances executed the assignment and delivered the note and mortgage to Wilson. The reply further alleged that the whole transaction amounted in law to nothing more than the payment of $400 on the note, for which plaintiff in his petition had given defendant credit. It further alleged that Wilson wrote in the name of Hutchison as assignee, in order that Hutchison might make a formal release of the mortgage. The jury found that plaintiff accepted the $400 on Wilson's representations to the effect that the note and mortgage were of very little value and would be very difficult of collection, that Wilson knew at that time that defendant had made arrangements for the payment or purchase of the note, and that plaintiff believed and relied upon the statements.

As already observed the trial court approved these findings of fact but held that the note had been paid and discharged by

the transaction. The plaintiff relies upon the rule that an agreement to accept part in satisfaction of the whole of a liquidated demand is invalid because without consideration. (*Bridge Company v. Murphy,* 13 Kan. 35; *St. L. Ft. S. & W. Rld. Co. v. Davis,* 35 Kan. 464, 11 Pac. 421.) The reason for the rule is that there is no consideration for the release of the remainder of the debt, as the debtor gives no more than he is bound to give, and the creditor accepts no more than he is entitled to receive. The rule is said to have had its origin in a *dictum* in the English Court of Common Pleas (*Pinnell's Case,* 5 Coke's K. B. 117). Although it is universally recognized by courts and text-writers, it has been criticised as technical, artificial and having no foundation in reasoning. (*Brooks and another v. White,* 43 Mass. 283, 285, 37 Am. Dec. 95; *Bolt v. Dawkins,* 16 S. Car. 198, 214.) In a number of states it has been entirely abrogated or modified by statute. Courts generally refuse to apply the rule where the technical reasons for doing so do not exist (*Brooks and another v. White,* supra; *Harper v. Graham,* 20 Ohio, 105, 115), and have recognized numerous exceptions to it, for instance, the payment of a part before due, or at a place other than that where the obligor was legally bound to pay, or a payment in property, regardless of its value, or by the debtor in composition with his creditors generally by which they agree to accept less than is due them, is held to create a consideration which is sufficient. The rule quite generally followed is that any additional consideration, however small, will support the new agreement, provided only it be such that in law it is sufficient to support an ordinary contract and consist of something which the debtor was not legally bound to do or give. (*Bryant v. Proctor,* 53 Ky. 451.) Thus it has been held that the payment of a debt or any part of the debt before it is due is something which the debtor is not under legal obligation to do and therefore furnishes a legal consideration for a contract to release or cancel a debt; and any new consideration moving from the debtor toward the creditor will take the agreement out of the operation of the rule. (1 C. J. 544, 545.) It is well settled that the courts will refuse to inquire into the adequacy of the consideration if there be any that will support an ordinary contract. (*Hastings v. Lovejoy,* 140 Mass. 261, 2 N. E.

776, 54 Am. Rep. 462.)   It is said that the additional considera-
tion may consist of anything which might be a burden to the
one party or a benefit to the other.   (1 C. J. 541.)   One estab-
lished exception to the rule is that payment by a third person
of a sum less than the amount due, with the understanding that
it shall  be in full payment, is held to be an accord and satis-
faction. .

A very thorough discussion of the subject of accord and
satisfaction will be found in an elaborate note in 100 Am. St.
Rep. 390-456.   The author of the note, referring to the tech-
nical distinction drawn by the earlier cases says:

"The strictness of the rule undoubtedly worked many hardships in
preventing a creditor, who needed the money, from making an accord
and satisfaction with his debtor or in preventing a debtor who might be
temporarily embarrassed from settling with his creditor for less than
the fixed amount of his debt.   Hence, the courts, though bound by pre-
cedents, from time to time enlarged the exceptions to the rule so that
now the exceptions might almost be said to form the rule itself."
(p. 430.)

There was great lack of harmony in the earlier decisions on
the question whether part payment made by a stranger to the
transaction to which it relates could be pleaded as accord and
satisfaction.   The English and many of the early American
cases held that a satisfaction given by a stranger is not good
because he is in no respect a privy to the original contract.
The leading English cases to that effect are *Grymes v. Blo-
field*, 1 Croke's (39 Eliz.) 541, and *Edgcombe v. Rodd and
Others*, 1 Smith, 515, 5 East, 294.   The doctrine of *Grymes v.
Blofield*, was followed in the United States by *Clove v. Borst,*
6 Johns. (N. Y.) 37, and by a number of other courts.·

In *Leavitt and Lee, Executors of Hans Wilson, dec'd v. Mor-
row*, 6 Ohio St. 71, the doctrine that a satisfaction is no defense
if it accrue from a stranger is discussed and the older cases are
criticised.   In the opinion it was said:

"But mere precedent alone is not sufficient to settle and establish for-
ever a legal principle. · Infallibility is to be conceded to no human tri-
bunal.   A legal principle, to be well settled, must be founded on sound
reason, and tend to the purposes of justice. . . . Precedents are to
be regarded as the great storehouse of experience, not always to be fol-
lowed, but to be looked to as beacon lights in the progress of judicial in-

vestigation, which, although at times they may be liable to conduct us to the paths of error, yet may be important aids in lighting our footsteps in the road to truth. . . . The rule laid down is purely technical; and the reason assigned, that the stranger is not privy to the condition of the obligation, loses all its reality when we consider that the satisfaction must have been accepted by the plaintiff, and assented to or ratified by the defendant. It would seem, therefore, that a rule which in its tendency is calculated to foster bad faith and defeat the purposes of justice ought not to be adhered to simply on account of its antiquity." (pp. 78, 80.)

The Ohio case was approved in *Harvey v. Tama County,* 53 Iowa, 228, 233, 5 N. W. 130, and cited in *Wellington v. Kelly et al.,* 84 N. Y. 543, 547, as having materially criticised and limited *Grymes v. Blofield,* supra. In *Snyder v. Pharo,* 25 Fed. 398, it was held that:

"Satisfaction of a debt by the hands of a stranger is good when made by the authority of, or subsequently ratified by the defendant, and the fact of pleading it, will be sufficient evidence of ratification." (Headnote, ¶ 2.)

In *Jackson v. Pennsylvania R. R. Co.,* 66 N. J. Law, 319, 49 Atl. 730, 55 L. R. A. 87, it was held that an accord between the plaintiff and a third person and satisfaction moving from such third person to the plaintiff, who accepts and retains it, are available as a defense if the defendant has either authorized or ratified the settlement. After a full consideration of the early authorities, English and American, on the question of accord and satisfaction entered into by a third person, it was said in the opinion:

"The tendency of the American decisions is strongly in favor of supporting a satisfaction moving from a third person, when such person either had authority to make it, or the act was followed by ratification, and the article received in satisfaction was retained. . . . The reason of the rule is simple. On the one hand, no party can be deprived of a right by mere payment by a volunteer. On the other hand, since a party is entitled to only one satisfaction, his acknowledgment that he has received it, and his retention of it, operate to extinguish his right." (pp. 325, 326.)

In *Crumlish's Adm'r v. Cent. Imp. Co.,* 38 W. Va. 390, 18 S. E. 456, 45 Am. St. Rep. 872, 23 L. R. A. 120, there is a review of the English cases and the early New York cases, as well as the later American cases, and attention is called to the fact that

in *Wellington v. Kelly et al.*, 84 N. Y. 543, the old cases were doubted. In the opinion it was said:

"It seems utterly unjust and repugnant to reason, that a creditor accepting payment from a stranger of the third person's debt should be allowed to maintain an action against the debtor pleading and thereby ratifying such payment, on the technical theory that he is a stranger to the contract. The creditor has himself, for this purpose, allowed him to make himself a *quasi* party, and consents to treat him so, so far as payment is concerned. To regard the debt paid, so far as he is concerned, is but to hold him to the result of his own act. Shall he collect the debt again? In that case can the stranger recover back? What matters it to the creditor who pays? As the supreme courts of Wisconsin and Ohio in cases above cited said, this doctrine is against common sense and justice." (p. 396.)

In *Harrisons v. Hicks*, 1 Port. (Ala.) 423, 27 Am. Dec. 638, it was said:

"The payment of a debt, although it be made by one who is not a party to the contract, and although the assent of the debtor to the payment does not appear is still the extinguishment of the demand." (Syl. ¶ 2.)

No cases have been cited in the brief which involved facts at all similar to the case at bar. Our own research has resulted in finding but two cases which are at all analogous. In *Shaw v. Clark*, 6 Vt. 507, 27 Am. Dec. 578, where a judgment debtor furnished the money to a third person to purchase a judgment from the creditor who accepted a less sum than the face of the judgment, it was said in the opinion: "As the sum paid was really the money of the debtor and paid over by his agent it is the same as if paid by himself." (p. 508.) The court held it to be quite obvious that the act of a debtor in furnishing funds to a third person to buy up his debts at a discount is so far fraudulent as to render the sale voidable at the election of the creditor. This case was decided in 1856.

A case to the contrary is *Gordon v. Moore*, 44 Ark. 349, 51 Am. Rep. 606, where the facts were in some respects similar to those in the present case, and it was held that an agreement by a creditor to accept from a third person, in behalf of the debtor, a smaller sum in satisfaction of the whole is valid and binding and will discharge the debt. In the opinion it was said that the consideration is that the creditor gets, or is assured of getting, what perhaps the debtor might never pay, and that "it

can not alter the nature of the case that the debtor repaid the advance." (p. 355.)

In 1 R. C. L. 182, it is said:

"The modern and better rule is that an accord and satisfaction made with one who is a stranger to the transaction to which it relates is good, and will bar an action on the claim involved, if the person against whom the claim was made has either authorized or ratified the settlement."

The author concedes that there are authorities which hold to the contrary supported by some of the earlier American cases and the English authorities, but adds that—

"It requires powers of discrimination looking far beyond the justice of the case to see the reason of this rule. The reason assigned by some of the early adjudications is, that the person from whom the accord and satisfaction comes is not privy to the contract giving rise to the debt. This reason might give just cause to the creditor to refuse to receive the satisfaction from a stranger, or third person, not known in the transaction of the parties, even as agent of the debtor, but when the creditor has actually received and accepted the contribution in satisfaction of the debt, to allow him to maintain an action on the same debt afterward would seem to shock the ordinary sense of justice of every man." (p. 182.)

In 1 Cyc. 317, it is said:

"But in order that the act of the stranger operate as a satisfaction of the debt or demand it must have been authorized by the debtor or subsequently ratified by him."

Formerly an exception to the rule was always made in a case where a release under seal was given with part payment on the theory that a release under seal implies a consideration. But this exception to the rule finds no room for application in those jurisdictions where, as in this state, the distinction between sealed and unsealed instruments has been abolished. (Gen. Stat. 1909, § 1643; 1 C. J. 543.)

From the foregoing authorities it seems firmly established that a debtor may authorize and employ a third person as his agent to make a satisfaction of his debt; that where he does so, and the money is advanced by the third party and accepted by the creditor in satisfaction of the debt it is a good accord and satisfaction. This is so even where the third party makes the payment without the debtor's knowledge, if the latter afterward ratify the action.

Did the concealment by Wilson of the fact that he was act-ing for the defendant destroy the effect of the payment, or in other words, must there be knowledge on the part of the creditor that the payment is made on behalf of the debtor be-fore it will constitute an accord and satisfaction? It was held that an accord and satisfaction is—

"The result of an agreement between the parties, and, like all other agreements, must be consummated by a meeting of the minds of the parties, accompanied by a sufficient consideration. If the creditor is to be held to abate his claim against the debtor, it must be shown that he understood that he was doing so when he received the claimed considera-tion therefor." (*Harrison v. Henderson*, 67 Kan. 194, 200, 72 Pac. 875.)

And in *Matheney v. El Dorado*, 82 Kan. 720, 109 Pac. 166, it was ruled that—

"To constitute an accord and satisfaction, the agreement that a smaller sum shall be accepted in discharge of a larger one originally claimed must have been entered into by the parties understandingly and with unity of purpose." (Syl. ¶ 1.)

But the extent of the doctrine there declared is merely that the smaller sum must not only have been offered, but it must have been accepted with the understanding that it was in full satisfaction of the larger amount claimed. The plaintiff cer-tainly understood that he was accepting the $400 in full satis-faction of all his interest in the note and mortgage. It is difficult to see how his rights were affected in the slightest by his failure to know and understand that Wilson was acting as the agent of the debtor, because as we have seen, the weight of authority is that a payment of a part by a stranger, who may have acted without the knowledge or consent of the debtor, will, if accepted by the creditor and afterwards ratified by the debtor, constitute a full accord and satisfaction.

Section 126 of the negotiable instruments law (Gen. Stat. 1909, § 5372) enumerates the various ways in which negotiable instruments may be discharged, among which is (5) "when the principal debtor becomes the holder of the instrument at or after maturity in his own right." The phrase "in his own right" has been construed to exclude a case where a maker acquires the instrument in a purely representative capacity. (*Bank v. Dryden*, 91 Kan. 216, 137 Pac. 928.) There it was held that the note is not discharged when the maker acquires

it as agent for another. Nor is it discharged when the maker becomes the holder, for example, as executor or administrator. (See Crawford's Ann. Neg. Inst. Law, Revised Uniform ed., p. 195, and cases cited.) Did not the debtor in this case become the holder of the instrument after maturity in his own right? Whether we consider the transaction as one in which he furnished the money in the first instance to purchase the note through his agent, Wilson, or as one in which Wilson first purchased it with his own funds and subsequently, upon being reimbursed by defendant, transferred it to him, it would seem to be clear that the maker became the owner in his own right, unless there be some principle of law which forbids a debtor to purchase his own debt. The holder of the note was willing to part with all his interest in it upon payment of $400, and accepted in full consideration for his interest that sum from one whom he believed to be the purchaser and surrendered the note and security. How are his rights as a holder affected in any manner by the subsequent transfer of the note to the maker? Promissory notes, both before and after maturity, are negotiable and transferable, and the exigencies of business and trade demand the extension rather than the restriction of these qualities.

We fail to find any showing of fraud in the transaction by which plaintiff was induced to transfer the note to Wilson, unless it must be said as a matter of law that the transaction was fraudulent because it amounted to a purchase by the defendant of his own debt, and because the plaintiff supposed he was dealing with Wilson. Leaving out of consideration for the present that feature of the matter, let us inquire what finding there is which shows fraud. Finding No. 10 is as follows:

"Did the plaintiff accept $400 from R. C. Wilson for an assignment of the $1200 note and mortgage in question, relying upon his own general knowledge of the defendant's responsibility and probable ability to pay and induced by a belief, based upon such knowledge that it was for his best interest to accept Wilson's proposition to pay said sum for such assignment? Answer: Accepted on R. C. Wilson's representations."

Other findings are to the effect that Wilson said to plaintiff, in substance, that the note and mortgage "were of very little value and would be very difficult of collection;" that Wilson knew defendant had made arrangements for the *payment or*

*purchase* of the note and concealed that fact from the plaintiff. The jury being asked to state in what way he concealed the fact from the plaintiff that defendant had made these arrangements answered that it was done by leaving the name of the assignee out of the assignment. The answer is meaningless. It would have been an equally appropriate answer if they had been asked to state in what way Wilson concealed from plaintiff the existence of any other fact which he had failed to mention. If they had been asked to state in what way he concealed from plaintiff the condition of defendant's health, the answer would have been no less absurd. The jury might better have answered: "We do not know." The execution of a blank assignment of instruments is a common practice. The assignment was left in blank, and the jury found that Hutchison's name was written in afterwards in order that he might execute a proper release of the mortgage. The assignment was executed by the plaintiff, not by Wilson. The plaintiff was willing to execute it in blank and there was no fraud in the act of Wilson in writing in the name of any one he pleased. The plaintiff supposed he was transferring his right in the mortgage to Wilson; and if the latter's name had been written in the assignment, plaintiff would have remained equally ignorant of the fact, if it was a fact, that his brother had made arrangements for the purchase or payment of the note. Moreover, there is no showing or finding that the defendant had provided a fund for the full payment of the note. The most that is shown is that he had arranged with a banker to buy the note for him. How much he paid the banker over and above the $400 advanced to the plaintiff, or how he paid it, does not appear. If plaintiff had known that his brother was to reimburse Wilson or had already advanced the money to Wilson, he might still have been willing to accept that sum in satisfaction of the entire debt.

It certainly does no violence to the presumed intention of the parties to hold him to the result of his own act in accepting the $400 with the understanding, at least, that he was parting with all his interest in the note and that, so far as he was concerned, the sum he received was to be in full payment of his claim. So far as shown by the evidence or findings, the money actually received by the plaintiff was advanced by the third

party. Plaintiff therefore received something he might not otherwise have received; and applying the rule that any benefit or advantage accruing to the creditor, however slight, is a sufficient consideration to support the agreement, we think it must be held that a consideration was shown in this case. The rule that a payment of a lesser sum accepted with the understanding that it shall be in full discharge of the entire debt will not bar an action to recover the balance unless made upon a new and distinct consideration, rests rather upon technical considerations than upon common sense, and the strict adherence to it has often resulted in preventing justice and the enforcement of the real intent of the parties. As we have seen, the modern tendency of the courts is to enlarge the exceptions to the rule in order to avoid its harshness, and to enforce settlements, adjustments and compromises. It is always necessary that the minds of the debtor and creditor meet upon the proposition that the receipt of the lesser sum shall extinguish all right on the part of the creditor to exact further payment. (*Harrison v. Henderson,* 67 Kan. 194, 72 Pac. 875; *Matheney v. El Dorado,* 82 Kan. 720, 109 Pac. 166.) When it is shown that the minds of the parties, whether acting by and for themselves as principals, or through others as agents, have met and agreed upon this point, the courts should reach out and seize upon any possible or probable benefit to the one, or loss or inconvenience to the other, which may be said to constitute a consideration for the new agreement, and thus carry into effect the understanding of the parties.

Wilson's representations were merely the expression of his opinion. Besides, it seems far fetched to say that plaintiff had a right to or did rely on Wilson's statement as to the financial responsibility of his brother, because the record shows that he must have known more about that matter than Wilson. The defendant is his brother. In this same action plaintiff sues upon other causes of action involving an account showing numerous business transactions between the two covering a period of thirteen years and in which the plaintiff was the creditor and his brother the debtor. They lived in the same neighborhood. Part of the account sued for is for labor performed by plaintiff for the defendant. Plaintiff must have known about his brother's financial affairs. He knew the note

had been given to take up a previous note for $1000 and interest which his brother had been unable to pay. So far as the record shows the $400 was advanced by a third party. It was entirely satisfactory to plaintiff until he learned subsequently that Wilson had been acting in behalf of his brother, when he attempted to repudiate the transaction, but retained the payment.

Property of all kinds, real and personal, is purchased every day by agents for undisclosed principals. Why may not an individual purchase and become the owner of the evidence of his indebtedness? It is a common practice for the state, for cities and other municipalities, as well as for private corporations, to purchase their own bonded indebtedness. We have been cited to no principle of law, and are not aware of any, which would prevent an individual from going into the market and purchasing at a discount or otherwise, securities upon which he is indebted and which he has put in circulation. If he may do this himself, he may accomplish the same thing by an agent who acts without disclosing the agency.

We think the trial court wisely concluded that the findings of fact might be permitted to stand as approved without affecting the rights of the parties, and that upon the facts plaintiff can not maintain the action to recover on the note.

There is a cross-appeal in reference to the two causes of action upon which plaintiff recovered a small judgment. We find nothing substantial in the claims of error as to these matters, and the judgment will be affirmed.