No. 33,689

JOE HALL, O. E. KING and GEORGE WAITT, Trustees of the Rose Hill State Bank, of Rose Hill, *Appellants,* v. A. C. SWINDELL and IVY M. SWINDELL, *Appellees.*

(76 P. 2d 769)

Opinion filed March 5, 1938.

*R. C. Woodward* and *H. Pauline Woodward,* both of El Dorado, for the appellants.

*George S. Benson, Jr.,* of El Dorado, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to collect on a note. Judgment was for defendants. Plaintiffs appeal.

On June 1, 1933, Mr. and Mrs. Swindell, defendants, were indebted to the Rose Hill State Bank, of Rose Hill, in the sum of $1,370, for which they had given their note secured by a mortgage on certain livestock and implements. During the general banking moratorium the bank was closed. Before it was permitted to open it was required to charge out twenty percent of its deposits and twenty percent of its assets. The twenty percent of the assets charged out was assigned to trustees for the depositors. The funds derived from the liquidation of these assets were to be used to repay the depositors for the twenty percent reduction they had accepted in their deposits.

The Swindell note was considered too great by $500. On June 1, 1933, the Swindells executed a note to the bank for $870. This note was secured by a mortgage on all the property formerly used as security for the $1,370 note. They also executed a note for $500, payable to the bank but assigned to trustees for the depositors of the bank. This note was unsecured. The $1,370 note was marked paid.

Sometime in October, 1934, Swindell advised the bank that he had no feed to maintain the stock covered by the chattel mortgage. The bank could not advance any more money, so a sale was agreed on for October 22, 1934. The bank agreed to accept the proceeds of the sale in full settlement of the $870 note. Swindell asked the cashier of the bank, who was one of the trustees, to agree to accept the proceeds of the sale for the $500 note as well as the $870. The cashier said that he could not agree to do this, since he was only one of the trustees, but that he would be willing to do this if the other two trustees were willing. Mr. Swindell then saw one of the other trustees and he said he would be willing to do this if the other two trustees were willing. Mr. Swindell then saw one of the other trustees and he said he would be willing to accept the proceeds of the sale in payment for both notes if the bank cashier was willing. There is no evidence of any further action by the trustees. Before the sale was held Swindell told the bank cashier that unless the bank and the trustees were willing to take "the stuff and clean the slate"

he was going to take bankruptcy. The cashier told him he did not need to do that because they would take it and save that expense.

The sale was had and the net proceeds thereof amounted to $515. This amount was paid to the bank and the $870 note was marked paid and delivered to Swindell. Nothing whatever was done or said about the $500 given the trustees by Swindell.

On May 14, 1936, this action was begun by the trustees to collect the $500. The answer of the Swindells was that the facts as they have narrated here constitute an accord and satisfaction. At the conclusion of the Swindells' evidence, which showed facts about as they have been detailed here, the trustees demurred to it on the ground that it failed to show any defense to the cause of action of plaintiffs. This demurrer was overruled. The case was submitted to a jury. A verdict was returned for defendants. Judgment was entered accordingly.

Plaintiffs appeal on the ground that their demurrer to the evidence of defendants should have been sustained and their motion for judgment notwithstanding the general verdict should have been sustained.

The argument of plaintiffs is that the transaction between them and defendants was not an accord and satisfaction because the agreement was not supported by any consideration. The question is, Was the agreement of Swindell not to take bankruptcy any consideration for the agreement of the trustees to accept the proceeds of the sale in payment of both notes?

Plaintiffs argue that it was obvious that they would never receive anything from the sale of the mortgaged property. This court cannot assume that such is the case. There is not sufficient evidence in the record so that we can say this. As the situation was when Swindell made his proposition not to take bankruptcy the trustees would have been compelled to take a pro rata share with the general creditors had he taken bankruptcy. As it was, when they made the agreement alleged they became preferred creditors as far as the stock and other property could be sold for enough to pay more than the $870 note. As events transpired we know now that this did not happen, but we cannot say from this record that both parties did not think they would benefit by Swindell's refraining from taking bankruptcy. This court will not inquire into the adequacy of the consideration where it appears there was some consideration. The

giving up of the right to take bankruptcy on the part of the debtor was a valuable right. (See 1 R. C. L. 187.) We have concluded that this case falls within the rule laid down in *Sigler v. Sigler*, 98 Kan. 524, 158 Pac. 864. There this court held:

"Where it is shown that the minds of the parties, whether acting by themselves as principals or through others as agents, have met and agreed upon the proposition that the receipt of the lesser sum shall extinguish all right on the part of the creditor to exact further payment, any possible or probable benefit to the one, or loss or inconvenience to the other, will be held to constitute a consideration for the new agreement."

The judgment of the trial court is affirmed.